IN THE UNITED DATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 17-cv-1871-RM-STV

WENDY KOLBE, and
COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit organization,

      Plaintiffs,

v.

ENDOCRINE SERVICES, P.C., a Colorado Corporation,

      Defendant.

---

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON LIABILITY

---

Plaintiffs, by and through undersigned counsel, hereby move the Court for the entry of

Summary Judgment on Liability pursuant to Rule 56, Federal Rules of Civil Procedure, and in

support thereof states:

### Introduction

1.       Plaintiff Wendy Kolbe has a hard-to-control form of Diabetes that results in

unpredictable blood sugar spikes and valleys. Statement of Undisputed Material Facts, attached

hereto as Exhibit 1, ("Facts") 2, 3. Declaration of Wendy Kolbe ("Kolbe Dec."), attached hereto as

Exhibit 2 at p.1 ¶¶ 4, 5 & Ex. A thereto.

2.       Ms. Kolbe has a certified and registered service dog, Bandit, who has been trained

to assist Ms. Kolbe monitor her blood sugar levels based on scent that is undetectable to humans.

Kolbe Dec. at p. 2 ¶¶ 5-7, 12 & Exs. A-B.

3.      Ms. Kolbe's primary care provider referred her to Defendant's practice for

endocrine services. Facts 6; Kolbe Dec. at 2 ¶ 8.

4.      Ms. Kolbe went to Defendant's office with Bandit on the day of her appointment

and was seated in the waiting room filling out her new patient paperwork when she was

approached by Dr. Agha B. Khan, about her service dog's presence. Kolbe Dec. ¶¶ 9, 10. *See also*,

Facts 7-9.

5.      Dr. Khan is Defendant's President. *See generally* Facts, Ex. 1.

6.      Defendant has a policy in place that requires individuals with service dogs to: (1)

identify the animal as a service animal, and (2) provide "reasons for the presence of [the] pet[1]

during medical office visit[s.]" Facts 5 (emphasis added).

7.      Defendant's policy further provides that "[i]f there is no obviously visible

impairment/disability to the patient and the patient does not provide the reason/necessity for the

presence of pet at the time of visit to the medical office, patient is requested to have the pet taken to

their vehicle or have it taken out for a walk by patient's companion if present." *Ibid.*

8.      Ms. Kolbe identified Bandit to Dr. Khan as her service dog. Facts 7; Kolbe Dec. p.

2 at ¶ 12.

9.      Dr. Khan demanded that Ms. Kolbe remove Bandit from Defendant's office. Facts

9; Kolbe Dec. at p. 2 ¶¶ 10, 13, 16, 17.

---

[1]  Defendant's policy conflates pets with service animals. "Service animals are working animals,
not 'pets.'" DOJ Requirements.

10.     Ms. Kolbe did not receive services from Defendant's office due to Dr. Khan's demand that Ms. Kolbe remove Bandit from Defendant's office to receive treatment. *Id.* at 17.

### Argument

### I.     Standard of Review

Pursuant to Rule 56, Federal Rules of Civil Procedure:

> A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem. Coal Co., Inc.*, 41 F.3d 567, 569-70 (10th Cir. 1994). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion . . . ." *Robertson v. Bd. of Cty. Comm'rs of the Cty. of Morgan*, 78 F. Supp. 2d 1142, 1146 (D. Colo. 1999) (citation omitted). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one–sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). Once the moving party meets its initial burden of demonstrating an absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to move beyond the pleadings and to designate evidence which demonstrates the existence of a genuine dispute of material fact to be resolved at trial. See *1-800-Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) (citation omitted). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is

"genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson*, 477 U.S. at 248. In considering whether summary judgment is appropriate, the facts must be considered in a light most favorable to the non-moving party. *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted).

**II.      Title III of the Americans with Disabilities Act**

Under Title III of the Americans with Disabilities Act ("ADA" or "Title III"), "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Defendant is "a physician's office that provides services for Diabetes and some of the other endocrine related issues[,]" Facts 1, which constitutes a "place of public accommodation" under Title III. 42 U.S.C. § 12181(7)(F) (public accommodations include "professional office of a health care provider, hospital, or other service establishment"). Ms. Kolbe is an individual with disabilities, including Diabetes. Facts 2, 3. *See generally*, 42 U.S.C. § 12102 (definition of disability, including "endocrine . . . functions"). Ms. Kolbe has a record of having Diabetes, and Defendant regarded Ms. Kolbe as an individual with Diabetes. Facts 3; Declaration of Andrew C. Montoya, attached hereto as Exhibit 3 at p.1 ¶ 4, Ex. A thereto. *See* 42 U.S.C. § 12102(1), (3) (disability includes person with record of impairment, or person regarded as having an impairment).

Under Title III, unlawful discrimination includes: (1) the denial of participation in the goods, services and benefits of a place of public accommodation to a person with a disability, 42

U.S.C. § 12182(b)(1)(A)(i); (2) the failure to utilize the most integrated setting for the individuals with disabilities, *id.* at § 12181(b)(1)(B); (3) the imposition of eligibility criteria that tend to screen out individuals with disabilities, *id.* at § 12181(b)(2)(A)(i); and (4) a failure to make reasonable modifications to policies, practices and procedures for individuals with disabilities, *id.* at § 12181(b)(2)(A)(ii).

The United States Department of Justice ("DOJ") has promulgated regulations implementing Title III that contain specific, detailed provisions dealing with service animals, as well as free guidance available online to the public. 28 C.F.R. 36.302(c); Frequently Asked Questions about Service Animals and the ADA, https://www.ada.gov/regs2010/service_animal_qa.html ("DOJ FAQ") (last visited Jan. 17, 2018); and DOJ Civil Rights Division *Disability Rights Section* ADA Requirements Service Animals, technical assistance provided by the Department of Justice as a result of changes in the 2010 ADA regulations ("ADA Requirements"), available online at https://www.ada.gov/service_animals_2010.htm (last visited Jan. 17, 2018). ("DOJ Requirements"). *See also*, n.1 *supra*. The DOJ's Title III "guidance is entitled to deference because it represents the DOJ's authoritative interpretation of its own regulations." *Colo. Cross-Disab. Coal. v. Abercrombie & Fitch Co.*, 957 F. Supp. 2d 1272, 1280 (D. Colo. 2013).

To begin with, the term "service animal" is defined as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 C.F.R. § 36.104. The regulations then require that "[g]enerally, a public accommodation shall modify policies, practices, or

5

procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R.

36.302(c)(1). The regulations further specify that "[i]ndividuals with disabilities shall be permitted

to be accompanied by their service animals in all areas of a place of public accommodation where

members of the public, program participants, clients, customers, patrons, or invitees, as relevant,

are allowed to go." *Id*. at (c)(7). If it is not readily apparent what tasks the service animal performs

for the person with a disability, a public accommodation "may make two inquiries to determine

whether an animal qualifies as a service animal. A public accommodation may ask if the animal is

required because of a disability and what work or tasks the animal has been trained to perform." *Id*.

at (c)(6). Notably, that regulation permits those two inquiries, but does not require the individual

with a disability to affirmatively volunteer such information absent such questioning, as

Defendant's policy does. That regulation continues, "[a] public accommodation shall not require

documentation, such as proof that the animal has been certified, trained, or licensed as a service

animal." *Ibid*.

### III.    Section 504 of the Rehabilitation Act

Section 504 of the Rehabilitation Act ("Section 504") provides in pertinent part, "[n]o

otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be

excluded from the participation in, be denied the benefits of, or be subjected to discrimination

under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a).

Defendant receives Federal financial assistance by accepting Medicaid. Facts 4. *See also*, *United*

*States of America v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1040-41 (5th Cir. 1985) ("We hold

that Medicare and Medicaid are federal financial assistance for the purpose of Section 504"); 29

U.S.C. 794(b) (broad scope of "program or activity").

"The standards for determining violations of the Rehabilitation Act and Title III of the

Americans with Disabilities Act (ADA) generally are the same. Thus, with the exception of

references to the Rehabilitation Act's federal funding requirement, cases interpreting either are

applicable and interchangeable." 1 Americans with Disab.: Pract. & Compliance Manual § 4:6,

Rehabilitation Act of 1973 (internal footnotes and citations omitted). *Cf.* 29 U.S.C. 794(d)

(applying ADA Title I standards to Section 504 employment cases).

### IV.     Defendant's Policy Violates Title III and Section 504

Defendant's policy requires that individuals with disabilities desiring to utilize their

service animals at its office affirmatively take two steps. As Defendant's policy requires:

> If the pet[2] is identified as a service animal and patient/owner provides reasons for
> the presence of pet [sic] during medial office visit, pet is allowed, regardless of
> whether there is obviously visible impairment/disability. If there is no obviously
> visible impairment/disability to the patient and patient does not provide the
> reason/necessity for the presence of pet [sic] at the time of visit to the medial office,
> patient is requested to have the pet taken to their vehicle or have it taken out for a
> walk by patient's companion if present.

Facts 5. Defendant's policy violates the ADA and Section 504 by beginning the inquiry with the

default assumption that service animals will not be permitted unless it is necessary during the

appointment. *Ibid*. *See also*, Facts 7, 9. This is contrary to the plain language of the regulations,

which states that "[i]ndividuals with disabilities shall be permitted to be accompanied by their

service animals in all areas of a place of public accommodation where members of the public,

---

2 *See* n.1, *supra*.

program participants, clients, customers, patrons, or invitees, as relevant, are allowed to go." 28

C.F.R. § 36.302(c)(7). *See also*, DOJ Requirements ("A person with a disability cannot be asked to

remove his service animal from the premises unless: (1) the dog is out of control and the handler

does not take effective action to control it or (2) the dog is not housebroken.").[3]  The DOJ further

clarified in its commentary that "under the final rule, a healthcare facility must also permit a person

with a disability to be accompanied by a service animal in all areas of the facility in which that

person would otherwise be allowed." 28 C.F.R. Pt. 36, App. A. Although there are narrow

exceptions, such as operating rooms and burn units, the DOJ commentary explicates:

> A service animal may accompany its handler to such areas as admissions and
> discharge offices, the emergency room, inpatient and outpatient rooms, examining
> and diagnostic rooms, clinics, rehabilitation therapy areas, the cafeteria and
> vending areas, the pharmacy, restrooms, and all other areas of the facility where
> healthcare personnel, patients, and visitors are permitted without taking added
> precautions.

28 C.F.R. Pt. 36, App. A.

Defendant's policy then violates the ADA and Section 504 because it places the onus on

the individual with a disability to convince Defendant's staff that it is necessary to have the service

animal present during the appointment, placing another burden on the individual with a disability,

rather than placing the onus on Defendant's staff to inquire what tasks the animal performs. *See* 28

C.F.R. § 36.302(c)(6) (only two permissible inquiries are (1) whether it is a service animal, and (2)

what tasks it performs). *See also*, DOJ Requirements ("When it is not obvious what service an

animal provides, only limited inquiries are allowed. Staff may ask two questions: (1) is the dog a

---

[3] Defendant admits that Dr. Khan "did not observe any out of control behavior from the dog[,]"
Facts 8, and Bandit is housebroken.

service animal required because of a disability, and (2) what work or task has the dog been trained

to perform. Staff cannot ask about the person's disability, require medical documentation, require

a special identification card or training documentation for the dog, or ask that the dog demonstrate

its ability to perform the work or task."). As the DOJ explained in its commentary to the

regulations, the two specific questions public accommodations may ask were designed to be

"limited to eliciting the information necessary to make a decision without requiring disclosure of

confidential disability-related information that a public accommodation does not need." 28 C.F.R.

Pt. 36, App. A. Defendant's policy, however, turns that carefully balanced questioning on its head,

and requires the individual with a disability to marshal sufficient evidence and rationale to

convince Defendant's staff to change its default position that excludes animals. Such information

is likely to include the "confidential disability-related information" that is explicitly not required

under the regulations. *See id.*; 28 C.F.R. § 36.302(c)(6).

Defendant's policy violates the ADA and Section 504 for the foregoing reasons, and

Defendant applied that policy to Ms. Kolbe and Bandit, discriminating against her on the basis of

her disability in the process.

V. **Defendant's Demand that Ms. Kolbe Remove Her Service Animal Violated Title III and Section 504**

Defendant's unlawful policy notwithstanding, Ms. Kolbe was denied the benefits of

Defendant's goods, services, facilities, privileges, advantages, and accommodations in violation of

Title III's mandate. 42 U.S.C. § 12182(b)(1)(A)(i) ("It shall be discriminatory to subject an

individual or class of individuals on the basis of a disability or disabilities of such individual or

class, directly, or through contractual, licensing, or other arrangements, to a denial of the

9

opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity."). Defendant admits that Ms. Kolbe sought Defendant's healthcare services. Facts 6. Defendant admits that Ms. Kolbe identified Bandit as a service animal. Facts 7. Defendant admits that Bandit was not out of Ms. Kolbe's control. Facts 8. Nevertheless, Defendant admits that it required Ms. Kolbe to remove Bandit from its office to her car. Facts 9. Even assuming that Defendant would have permitted Ms. Kolbe to receive services in the absence of Bandit, the exception does not apply in this situation. "If a public accommodation properly excludes a service animal under § 36.302(c)(2), it shall give the individual with a disability the opportunity to obtain goods, services, and accommodations without having the service animal on the premises." 28 C.F.R. § 36.302(3) (emphasis added). Bandit was not properly excluded under Section 36.302(c)(2). That section permits exclusion of service animals in only two circumstances: "(i) The animal is out of control and the animal's handler does not take effective action to control it; or (ii) The animal is not housebroken." 28 C.F.R. § 36.302(c)(2)(i)-(ii). Because Defendant did not properly exclude Bandit, its refusal to permit Ms. Kolbe to enjoy its goods, services, facilities, privileges, advantages, and accommodations with Bandit present denied services to Ms. Kolbe as is required under both the ADA and Section 504.

### Conclusion

Defendant admits it has a policy requiring individuals with service animals to first identify an animal as a service animal, and then be afforded the opportunity to convince Defendant's staff that the animal must be present during the appointment. Facts 5. Should that individual fail to convince Defendant's staff for whatever reason, Defendant denies access to the animal. Facts 5,

7-9. This policy violates the ADA, particularly in light of the directly on-point guidance provided

by the DOJ in the regulations and other policy documents it makes available to the public.

Defendant applied this policy to Ms. Kolbe, excluding Bandit, which constitutes discrimination.

Facts 6-9.

The undisputed facts of this case establish that Defendant discriminated against Ms. Kolbe

on the basis of her disability in violation the ADA and Section 504.

WHEREFORE, Plaintiffs respectfully request that this Court grant this Motion and find

Defendant liable for its violations of Title III and Section 504.

Respectfully submitted January 19, 2018.

> _s/ Andrew C. Montoya_
> Andrew C. Montoya
> Kevin W. Williams
> Colorado Cross-Disability Coalition Legal Program
> Empire Park
> 1385. S Colorado Blvd, Suite 610-A
> Denver, CO 80222
> Telephone: (720) 336-3584
> Facsimile: (720) 420-1390
> E-mail: amontoya@ccdconline.org
> E-mail: kwilliams@ccdconline.org
>
> _Attorneys for Plaintiffs_

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will provide electronic service to the following:

Michael R. Waters
Email: mike@lawfirmwkc.com

*s/ Tram Ha*
Legal Program Assistant
Colorado Cross-Disability Coalition