## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 17-cv-1871-RM-SKC

WENDY KOLBE, AND
COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit organization,

    Plaintiffs,

v.

ENDOCRINE SERVICES, P.C., a Colorado Corporation,

    Defendant.

---

### PLAINTIFFS' BRIEF REGARDING JURY INSTRUCTIONS

---

Pursuant to this Court's Courtroom Minutes (ECF No. 153) and Civil Practice Standard IV.C.1, Plaintiffs, by and through undersigned counsel, hereby submit their Brief Regarding Jury Instructions.

### INTRODUCTION AND BACKGROUND

On three separate occasions this Court has set this case for trial and ordered the Parties to submit jury instructions and a verdict form.[1] The first two trial settings were vacated as a result of pandemic-related concerns.[2] The Courtroom Minutes above were entered after the Trial

---

[1] *See* Order Setting Case for Trial (ECF No. 104); Second Order Setting Case for Trial (ECF No. 135); Third Order Setting Case for Trial (ECF No. 141). In the Orders, this Court also ordered the Parties to submit verdict forms. As explained further herein, Defendant has submitted identical jury instructions and verdict forms each time.

[2] *See* Minute Order (ECF No. 134 (vacating jury trial setting based on Status Report (ECF No. 133) representing Parties' position that they do not wish to be a pilot trial for the reasons discussed during the first Trial Preparation Conference)); Order (ECF No. 140) (granting the Parties' Joint Motion to Continue Jury Trial). Prior to the Court vacating the first trial date, the Parties had submitted proposed jury instructions and verdict forms as ordered by this Court. Plaintiffs' Proposed Jury Instructions and Verdict Form were submitted as ECF Nos. 127-128. Defendant's Proposed Jury Instructions and Verdict Form were submitted as ECF Nos. 124-125. The Parties also submitted

Preparation Conference held on February 18, 2022. Prior to that Conference, this Court ordered the Parties "**[f]ourteen days** before the trial preparation conference" to submit stipulated jury instructions where possible and submit their own separate instructions regarding those issues upon which they could not agree. *See* Third Order Setting Case for Trial (ECF No. 141, pp. 1-2). Plaintiffs drafted a combined set of instructions and sent them to counsel for Defendant in an effort to stipulate. Counsel for Plaintiffs spent a significant amount of time preparing the combined set of instructions by going through Defendant's initial proposed instructions (ECF No. 124) and comparing and contrasting them to Plaintiffs' proposed instructions (ECF No. 127) line by line. The resulting combined instructions included many of Defendant's proposed instructions with changes to incorporate matters raised in Plaintiffs' proposed instructions or to omit matters with which Plaintiffs could not agree. In addition, the combined instructions corrected many factual inaccuracies in Defendant's initial proposed instructions, such as Defendant's misidentification of the parties[3] and misstatements of the applicable law.[4] Plaintiffs' counsel also spent time attempting to work with counsel for Defendant to reach stipulations,

---

briefs regarding standing as ordered by this Court. This Court has yet to provide definitive ruling on the issues of standing, but, during the Final Trial Conference on February 18, 2022, the Court did state, "I believe that the organization has standing," Finally, Plaintiffs also filed their Brief in Support of Proposed Jury Instructions Regarding Liability and submitted proposed jury instructions (ECF Nos. 120, 120-1, 120-2); Defendant filed a Trial Brief with proposed instructions regarding liability (ECF Nos. 118-119).

[3] *See e.g.*, ECF No. 124, p. 1 ("In this case, the plaintiff is Shayna Crowell. . . . the defendant is Denver Health and Hospital Authority . . . .").

[4] Defendant's authority for its jury instructions is Judge Kane's sample jury instructions for "claims that . . . termination from employment . . . was in violation of . . . the Americans with Disabilities Act . . . ."; Defendant failed to tailor the jury instructions to the facts and law of this case—a Title III claim against a public accommodation. *Compare id*. at 24 (discussing employer/employee claims under Title I of the Americans with Disabilities Act ("ADA")), *with id*. at 6 (stating that Title III of the ADA is at issue in this case); *compare* ECF No. 124, p. 25 (copying the elements of a Title I ADA claim; *e.g.,* "[t]hat Plaintiff's doctor certified to Defendant that she had a disability and the requested accommodation was necessary"), *with* 28 C.F.R. § 36.302(c)(6) ("A public accommodation shall not ask about the nature or extent of a person's disability . . . [and] shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal."). Each Title of the ADA pertains to different types of entities and has different standards for claims and defenses.

although Defendant did not agree to all of the stipulated instructions proposed by Plaintiffs' counsel, leading to Plaintiffs submitting both Stipulated Instructions (ECF No. 144-1), signed by counsel for both parties and the accompanying instructions (ECF No. 144) and Plaintiffs' Proposed Jury Instructions (ECF No. 143) and accompanying instructions (ECF No. 143-1). Plaintiffs followed the instructions set forth in this Court's Order (ECF No. 141, p. 2).

Defendant did not submit any other instructions or a verdict form as required by this Court's Order. Plaintiffs raised this issue in the Trial Brief submitted before the Trial Preparation Conference and requested this Court not allow Defendant to file further proposed instructions or a verdict form or rely on any previously submitted proposed jury instructions or verdict forms, citing to cases ordering the same under these circumstances.[5] Given Defendant's propensity for not complying with this Court's Orders throughout this case, and based on the cases cited by Plaintiffs' Trial Brief, it seemed it was only a matter of fairness to Plaintiffs and this Court to prohibit Defendant from continuing to violate this Court's Orders regarding jury instructions and verdict forms.[6] Nevertheless, during the Trial Preparation Conference, this Court permitted Defendant yet a third opportunity to file instructions. Defendant failed to follow this Court's Order regarding jury instructions once again. Not only did Defendant fail to file new instructions

---

[5] *See* Plaintiffs' Trial Brief (ECF No. 152, pp. 7-8) (citing *Schwab v. Kids' Fin. Inc.*, Civ.A.06-CV-01793MSK, 2008 WL 1746941, at *2 (D. Colo. Apr. 14, 2008) (failure to file jury instructions constitutes a waiver to do so); *Tantype v. Gibi, LLC* , CV 14-5595-JFW (ASX), 2015 Wl 13917182, at *1 (C.D. Cal. June 5, 2015) (the court struck the proposed jury instructions and proposed verdict forms for failure to comply with the court's scheduling and case management orders). Defendant's conduct is causing Plaintiffs and this Court to expend unnecessary time and effort reviewing same documents the Parties have already addressed.

[6] The Proposed Stipulated Instructions were signed by counsel for both Parties. They include some of the instructions that are produced for a second time by Defendant, but they include other instructions and different ones as well. Defendant's failure to acknowledge to what instructions it has already stipulated coupled with the resubmission of some of the same instructions without any numbering makes it very difficult for Plaintiffs to draft a brief opposing such instructions and to know what instructions will be discussed during the charging conference with this Court.

(which it should have done based on the changed circumstances related to the stipulations reached by the Parties), Defendant filed exactly the same proposed, unnumbered instructions it had filed before with the exact same misidentification of the parties and the same misstatements of law. *Compare* ECF No. 154, *with* ECF No. 124; *compare* ECF No. 154-1, *with* ECF No. 119. Defendant did not even bother to correct the obvious errors in its prior instructions. *See, e.g.*, ECF No. 154, p. 1 (once again attempting to inform the jury via its Opening Instruction that Plaintiff is "Shayna Crowell" and Defendant is "Denver Health and Hospital Authority")). Defendant fails to address the Parties' Stipulated Instructions; Defendant does not explain why the Stipulated Instructions provided by both Parties and signed by counsel for Parties are now insufficient. *See* ECF Nos. 154, 154-1 (providing instructions with no explanation or context). Defendant makes it impossible for Plaintiffs and this Court to determine which instructions it seeks to have this Court consider—those to which the Parties stipulated or the same instructions Plaintiffs' counsel carefully examined for the purposes of reaching the proposed Stipulated Instructions.

In addition, Plaintiffs' Proposed Jury Instructions (ECF No. 143-1), with which Defendant did not agree, should be used because they correctly state the law that applies to this case and the state of the record. For instance, Plaintiffs' proposed instruction on the definition of disability is taken directly from the statutory and regulatory language that governs, including the rules of construction imposed by Congress in passing the ADA Amendments Act. *See* 42 U.S.C. § 12102 (defining disability); 28 C.F.R. §§ 36.101 (affording expansive coverage of the ADA), 36.105 (defining disability); ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (codified as amended in scattered sections of 42 U.S.C.) ("ADAAA"). Similarly, Plaintiffs'

proposed instruction on the Parties' stipulations is taken directly from the Parties' stipulations in the Final Pretrial Order. *See* ECF No. 103, pp. 5-6.

In addition, the Parties were ordered to file additional briefs regarding the timing of when Ms. Kolbe needed to prove the elements of her prima facie case. Order Denying Motion to Continue (ECF No. 116, pp. 2-4). The Parties submitted simultaneous briefing as instructed: Plaintiffs' Brief In Support of Proposed Jury Instructions Regarding Liability ("Pls.' Br.") (ECF. No. 120); Defendant's Trial Brief (ECF No. 118). As a result, the arguments set forth in Pls.' Br. not otherwise set forth below are incorporated herein.

## ARGUMENT

There is a distinction in this case between what the doctor's office was permitted to know or believe about Plaintiff Kolbe's disability to determine whether her service animal could accompany her to the doctor's office on the date Plaintiff Kolbe came to that office for treatment based on a referral from her primary care physician (which is determined by statutory, regulatory and other guidance) and what she must prove in order to meet the prima facie case requirements in this case (which elements that Plaintiff must prove for purposes of trial). No individual is required to prove a prima facie case <u>to the place of public accommodation</u> at the time of the visit. A "prima facie case" is a device used to determine whether discrimination occurred during the trial or dispositive motion and has nothing to do with the applicable statutes and regulations pertaining to service animals as explained below.[7]

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) ("The complainant <u>in a Title VII trial</u> must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.") (emphasis added.); *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (the purpose of a prima facie case "is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor") (internal quotations and citations omitted); *Frappied v. Affinitiy Gaming Black Hawk*, LLC, 1:17-

5

I.      **Statutes at Issue and Plaintiffs' Prima Facie Case[8]**

Under Title III, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Defendant is a place of public accommodation. Final Pretrial Order (ECF No. 103, p. 6, Stip. 7). *See also* 42 U.S.C. § 12181(7)(F) (defining a public accommodation to include "professional office of a health care provider, hospital, or other service establishment"). "Ms. Kolbe sought Defendant's endocrinology services on June 8, 2016, following a referral from [Ms. Kolbe's primary care provider] to Defendant's office to evaluate and assess for diabetes and to evaluate for an insulin pump." ECF No. 103, p. 6, Stip. 9. At the time Ms. Kolbe came to the appointment, she had her service animal, a dog named Bandit, with her. Under Title III, unlawful discrimination includes inter alia: (1) the denial of participation in the goods, services and benefits of a place of public accommodation to a person with a disability, 42 U.S.C. § 12182(b)(1)(A)(i); and (2) a failure to

---

CV-1294-RM-NYW, 2019 WL 13093059, at *2 (D. Colo. Jan. 17, 2019), *rev'd on other grounds and remanded sub nom. Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038 (10th Cir. 2020) (same).

[8] Plaintiffs also bring claims pursuant to Section 504 and the CADA. Section 504 prohibits discrimination against qualified individuals with disabilities by any program, service or entity that receives federal financial assistance. 29 U.S.C. § 794. Defendant admits that it accepts federal financial assistance in the form of Medicaid reimbursements. (ECF No. 103, pp. 6.) "The standards for determining violations of the Rehabilitation Act and Title III of the Americans with Disabilities Act (ADA) generally are the same. Thus, with the exception of references to the Rehabilitation Act's federal funding requirement, cases interpreting either are applicable and interchangeable." 1 Americans with Disab.: Pract. & Compliance Manual § 4:6 (internal footnotes omitted). *See also Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104 (3d Cir. 2018), *reh'g denied* (Sept. 12, 2018) (concluding "that the 'reasonableness' of an accommodation or a modification under either [the ADA or Section 504] must be interpreted the same way [and t]hus, it constitutes discrimination under the RA, to the same extent as under the ADA, to refuse to permit disabled individuals to be accompanied by service animals"). *Cf.* 29 U.S.C. § 794(d) (applying ADA Title I standards to Section 504 employment cases). Likewise, under the CADA, with respect to claims brought by individuals with disabilities, "[a] court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal [ADA] and its related amendments and implementing regulations." Colo. Rev. Stat. § 24-34-802(4). The proof requirements for each claim are set forth in Plaintiffs' Trial Brief (ECF No. 152, pp. 4-7).

make reasonable modifications to policies, practices and procedures for individuals with disabilities, *id*. § 12182(b)(2)(A)(ii). Defendant's entire case is based on the fact that its agent and only physician, Dr. Khan, reviewed the medical record in advance of seeing Ms. Kolbe and used that medical documentation to determine that Ms. Kolbe was not entitled to have her service animal at its place of public accommodation. Nothing in the ADA implementing regulations or Department of Justice ("DOJ") guidance regarding service animals treats medical offices or doctors differently from any other place of public accommodation. The DOJ regulations and guidance prohibit using "confidential disability-related information", 28 C.F.R. pt. 36, app. A at 802 (2021), for the purpose of evaluating a service animal's access to a place of public accommodation; a public accommodation does not need and may not consider any medical information when presented with a service animal—even if the public accommodation is a doctor's office. Therefore, Ms. Kolbe was not required to prove to Defendant or its physician that she did or did not have a disability at the time of the visit in order to be accompanied by her service animal.

Because the Title III regulations require a public accommodation to modify its policies and practices to permit the use of a service animal, "use of a service animal by a disabled individual 'is reasonable under the ADA as a matter of law'" unless a regulatory exception applies. *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 179 (3d Cir. 2019) (quoting *Berardelli v. Allied Servs. Inst. of Rehab. Med.*, 900 F.3d 104, 119 (3d Cir. 2018), *reh'g denied* (Sept. 12, 2018)). Endocrine Services must demonstrate that it invoked an exception. There are a small group of regulatory exceptions that permit a public accommodation to deny the per se reasonable accommodation of a service animal: if granting access would pose a "direct threat to the health

or safety of others," 28 C.F.R. § 36.208(a); if the service animal is "out of control" or "not housebroken," *id*. § 36.302(c)(2)(i)-(ii); if granting access would "fundamentally alter" the nature of the services offered by a public accommodation, *id*. § 36.302(a), or if the public accommodation has imposed "legitimate safety requirements," *id*. § 36.301(b). *See also Matheis*, 936 F.3d at 178-80. Defendant in this case does not raise any affirmative defense that would be applicable in a service animal case.[9]

Keeping in mind the above applicable statutes, regulations and guidance that apply to whether a service animal may be permitted in a place of public accommodation, the issue for this Court to decide is whether Ms. Kolbe can prove a prima facie case of unlawful discrimination under Title III. In this District, Plaintiffs must show the following: (1) Plaintiff is an individual with a disability; (2) Defendant, a private entity, owns, operates and/or leases a place of public accommodation; (3) Plaintiff was deprived of the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation; and (4) Defendant failed to make reasonable modifications that would accommodate Plaintiff's disability without fundamentally altering the nature of the public accommodation. *Murphy v. Aaron's, Inc.*, No. 19-CV-00601-CMA-KLM, 2019 WL 5394050, at *3 (D. Colo. Oct. 22, 2019), *report and recommendation adopted*, No. 19-CV-00601-CMA-KLM, 2020 WL 2079188 (D. Colo. Apr. 30, 2020) (citing 42 U.S.C. § 12182(a) & (b); *Civil*

---

[9] Instead, at the time Ms. Kolbe visited the medical office, Defendant claimed her service animal was not permitted based on his impermissible review of a medical record and irrelevant determination that Ms. Kolbe did not have diabetes. Def.'s Mot. Summ. J. (ECF No. 82, pp. 4-5.). Regardless of the way Defendant characterizes the interaction with Ms. Kolbe regarding whether he made an "inquiry" regarding her disability or service animal or not, what he did was rely on medical evidence he was not allowed to rely on in order to determine whether Ms. Kolbe's service animal should be allowed to enter and remain in its professional office of a healthcare provider—the nature and extent of her disability.

*Rights Educ. & Enf't Ctr. v. Sage Hosp. Res. LLC*, 222 F. Supp. 3d 934, 956 (D. Colo. 2016)); *Dahlberg v. Avis Rent A Car Sys., Inc.*, 92 F. Supp. 2d 1091, 1100 (D. Colo. 2000) (same).

Defendant did have a specific policy regarding service animals in place at the time Ms. Kolbe visited his office. As set forth above, Defendant's reasoning for denying access to the service animal was based on an impermissible reason, but the policy itself also incorrectly states the requirements of the law, demonstrating Defendant will continue to violate the rights of individuals with disabilities who have service animals.[10] There is simply nothing in the DOJ regulations or the DOJ guidance that would require the owner of the service animal to have to explain the reason for the presence of the service animal at the place of public accommodation. Again, the DOJ has been explicit about the two inquiries that are permissible and the fact that no place of public accommodation may inquire, look into, or otherwise examine medical documentation regarding the individual's disability.

## II.   Defendant's Inappropriate Instructions.

This Court must not consider Defendant's proposed instructions because they ignore the changes made to reach the Stipulated Instructions and ignore significant applicable portions of the law, as set forth below.

### A. Definition of "Disability"

---

[10] *See* Pls.' Mot. for Summ. J. on Liability (ECF No. 28, p. 7) (footnote omitted):

> If the pet [sic] is identified as a service animal and patient/owner provides reasons for the presence of pet [sic] during medial office visit, pet is allowed, regardless of whether there is obviously visible impairment/disability. If there is no obviously visible impairment/disability to the patient and patient does not provide the reason/necessity for the presence of pet [sic] at the time of visit to the medial office, patient is requested to have the pet taken to their vehicle or have it taken out for a walk by patient's companion if present.

In this case, "disability" means having a physical impairment that substantially limits one or more of the major life activities of an individual or having a record of having such an impairment. 42 U.S.C. § 12102(1). Congress specified rules of construction in the definition of disability, including its explicit repudiation of two Supreme Court cases that had significantly limited the scope of the term "disability" under the ADA. *See* 42 U.S.C. § 12102(4) (setting out rules of construction of the definition of disability that favor broad coverage); 42 U.S.C. § 12101 (finding that *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999) and *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184 (2002) limited the scope of individuals protected by the ADA due overly narrow construction of "disability" under the ADA and rejecting these courts' reasoning). In defining disability, Congress mandated that it be "construed in favor of broad coverage of individuals . . . to the maximum extent permitted . . . ." 42 U.S.C. § 12102(4)(A). ADA implementing regulations, which are entitled to significant deference, *see Bragdon v. Abbott*, 524 U.S. 624, 646 (1998) further bear out the broad coverage afforded by Congress. The plain language of those regulations state that a "physical impairment" includes disorders and conditions that affect "one or more body systems, such as . . . endocrine," and that "diabetes" is a physical impairment. 28 C.F.R. § 36.105(b)(1)-(2).

Congress further commanded that the phrase "'substantially limits' shall be interpreted consistently with the findings and purpose of the [ADAAA]." 42 U.S.C. § 12102(4)(B). Congress also made clear that, in making "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as . . . medication . . . ." *Id*. § 12102(4)(E)(i)(I). The regulations further bear out the construction of the phrase "substantially limits." *See* 28 C.F.R. §

10

36.105(d)(1) (favoring broad construction). These rules of construction clarify that "'[s]ubstantially limits' is not meant to be a demanding standard. . . . The primary object of attention in cases brought under Title III of the ADA should be whether public accommodations have complied with their obligations and whether discrimination has occurred, not the extent to which an individual's impairment substantially limits a major life activity." *Id*. § 36.105(d)(1)(i)-(ii). In fact, the Department of Justice has gone so far as to indicate that "some types of impairments will, in virtually all cases, result in a determination of coverage . . . Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward." *Id*. § 36.105(d)(2)(ii). "[A]pplying these principles it should be easily concluded that . . . diabetes substantially limits endocrine function . . . ." *Id*. § 36.105(d)(2)(iii)(H).

These are the standards and constructions set forth in Plaintiffs' Proposed Jury Instruction No. 6 (ECF No. 143-1). Defendant's proposed instruction is devoid of and deviates from any such standards or rules of construction. ECF No. 154-1, p. 2, *See also* ECF No. 154, p. 26 (offering a different definition of disability from Defendant's other submission), p. 27 (offering narrow definition of "substantially limited").

### B. Definition of "Service Animal" and Related Standards

The DOJ has also promulgated regulations implementing Title III that contain specific, detailed provisions dealing with service animals and what constitutes discrimination. *See* 28 C.F.R. § 36.302(c) (directing public accommodations to modify policies and practices to permit the use of a service animal). The DOJ has developed guidance that is publicly available online as well. *See, e.g.*, U.S. Dep't of Justice, Frequently Asked Questions about Service Animals and the

11

ADA (July 2015), https://www.ada.gov/regs2010/service_animal_qa.pdf ("DOJ FAQ"); U.S. Dep't of Justice, ADA Requirements Service Animals (Feb. 2020), https://www.ada.gov/service_animals_2010.htm ("DOJ Requirements"). The DOJ's Title III "guidance is entitled to deference because it represents the DOJ's authoritative interpretation of its own regulations." *Colo. Cross-Disab. Coal. v. Abercrombie & Fitch Co.*, 957 F. Supp. 2d 1272, 1280 (D. Colo. 2013), *aff'd in part, rev'd in part on other grounds*, 765 F.3d 1205 (10th Cir. 2014).

The term "service animal" is defined as "any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 C.F.R. § 36.104. The DOJ provides an example of the types of tasks a service animal may perform to include the following: "The dog must be trained to take a specific action when needed to assist the person with a disability. For example, a person with diabetes may have a dog that is trained to alert him when his blood sugar reaches high or low levels." DOJ FAQ at 1.

Again, this definition and the DOJ's interpretation of its own regulations, which is entitled to substantial deference, appear in Plaintiffs' Proposed Jury Instruction 7. (ECF No. 143-1.) Defendant has not submitted a definition of the phrase "service animal" at all. *See* ECF Nos. 154, 154-1.

DOJ regulations require that "a public accommodation shall modify policies, practices, or procedures to permit the use of a service animal by an individual with a disability." 28 C.F.R. § 36.302(c)(1). The regulations further specify that "[i]ndividuals with disabilities shall be permitted to be accompanied by their service animals in all areas of a place of public

accommodation where members of the public, program participants, clients, customers, patrons, or invitees, as relevant, are allowed to go." *Id.* § 36.302(c)(7). If it is not readily apparent what tasks the service animal performs for the person with a disability, a public accommodation "may make two [and only two] inquiries to determine whether an animal qualifies as a service animal. A public accommodation may ask if the animal is required because of a disability and what work or tasks the animal has been trained to perform." *Id*. § 36.302(c)(6).[11] That regulation continues, "[a] public accommodation shall not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal." *Id*. Most importantly, for purposes of determining whether Defendant engaged in unlawful discrimination in this case related to allowing Ms. Kolbe's service animal to remain in its place of public accommodation, "[a] public accommodation shall not ask about the nature or extent of the person's disability[.]" *Id*.; *see also* DOJ Requirements ("Staff cannot ask about the person's disability, require medical documentation, require a special identification card or training documentation for the dog, or ask that the dog demonstrate its ability to perform the work or task."). Here, Plaintiffs' Proposed Jury Instruction 8 incorporates the plain language of those regulations, synthesizing them with the Parties' stipulation of facts, (ECF No. 143-1), yet Defendant does not provide any instructions related to the use or exclusion of a service animal.

Defendant's Instruction Americans with Disabilities Act - Elements of Claim (ECF No. 154, p. 25) further misstates the law. Plaintiff was not required to request an "accommodation" at all prior to her visit to Defendant's clinic. Importantly, "public accommodation[s] shall modify

---

[11] To the extent Defendant argues it did not make any such "inquiry," this is just a semantic argument. Defendant considered medical information about Ms. Kolbe's disability and used it to determine that her service animal must leave.

policies, practices, or procedures to permit the use of a service animal," 28 C.F.R. § 36.302(c)(1), and "individuals with disabilities are permitted to be accompanied by their service animals in all places of public accommodation where the general public is permitted to go" without making a prior request. *id*. § 36.302(c)(7). Dr. Khan had every opportunity to ask Ms. Kolbe questions permitted under the DOJ regulations and did not do so.

Also, Defendant's proposed instruction requires plaintiff to prove that her doctor "certified to Defendant that she had a disability and the requested accommodation was necessary." Once again, Defendant provides absolutely no authority for this instruction, which has no basis in the applicable law. Neither the statute nor the regulations say anything about the referring doctor "certifying" anything related to Ms. Kolbe arriving with a service animal. Doing so would require exactly the opposite of what the regulations are designed to do: allowing an individual with a disability with a service animal to go where all members of the public are allowed to go and limiting the reasons a place of public accommodation has for admitting a service animal. It makes no difference whether that place of public accommodation involves a doctor at the professional office of a healthcare provider or a greeter at a retail store.

### C.  Additional Issues with Defendant's Proposed Instruction

Defendant's Instruction regarding Americans with Disabilities Act (ECF No. 154, p. 24) appears to be a reference to a Title I ADA employment instruction. This instruction, including its defenses, have no application in this Title III ADA case.[12]

---

[12] Defendant cites to instructions by Judge Kane that have been superseded and are no longer in effect. This is true for additional instructions Defendant proposes.

Plaintiffs and Defendant reached stipulations regarding liability with respect to the CADA and Section 504 damages requirements in their Stipulated Jury Instructions Nos. 19-22 (ECF No 144, pp. 31-35). Defendant's instructions regarding liability are confusing because they refer to the wrong parties, the wrong title of the ADA, and otherwise are inaccurate and incomplete. For instance, the ADA itself does not permit the recovery of monetary damages under Title III, as suggested in Defendant's re-submitted proposed instruction regarding Compensatory Damages. (ECF No. 154, pp. 28-29.) Plaintiffs' explanation of the claims involved in the three statutes is in their Trial Brief (ECF No. 152, pp. 4-7), as well as in Plaintiffs' Proposed Instructions 8 and 9 (liability under the ADA, CADA and Section 504).

In addition, the Parties have already agreed to what is required with respect to Plaintiff Kolbe's claim under the CADA claim Stipulated Instruction, No. 20 Damages Instruction—CADA, (ECF No. 144-1, p. 32), and to what is required with respect to Plaintiff Kolbe must prove under Stipulated Instruction, No. 21 Damages Instruction—Section 504 Claim: Qualified Individual (ECF No. 144-1, pp. 33-34). Because these two claims have different burdens of proof, this Court should accept the Stipulated Instructions.

WHEREFORE, for the foregoing reasons, Defendant's re-filed Proposed Instructions that differ from the Stipulated Instructions should be rejected. Plaintiffs also respectfully request this Court accept the Stipulated Instructions and accept Plaintiffs' separate Proposed Instructions for the reasons provided herein and in the authority set forth in the Proposed Instructions.

Respectfully Submitted on March 2, 2022,

*s/ Kevin W. Williams*
**Kevin W. Williams**
Andrew C. Montoya
Colorado Cross-Disability Coalition
Civil Rights Legal Program
Empire Park
1385 S. Colorado Blvd., Suite 610-A
Denver, CO 80222
Telephone: (720) 249-2214
Facsimile: (720) 420-1390
Email: kwilliams@ccdconline.org
Email: amontoya@ccdconline.org

*Attorneys For Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

Michael R. Waters
Email: mike@lawfirmwkc.com

Damon Douglas Cassens
Email: Damon@lawfirmwkc.com

*Attorneys for Defendant*

                                              *s/ Kara Gillon*
                                              Kara Gillon
                                              Legal Program Assistant
                                              Colorado Cross-Disability Coalition