**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 17-cv-1871-RM-SKC

WENDY KOLBE, and
COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit organization,

    Plaintiffs,

v.

ENDOCRINE SERVICES, P.C., a Colorado corporation,

    Defendant.

---

**FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER
OF JUDGMENT AND INJUNCTION**

---

    Plaintiffs Wendy Kolbe ("Ms. Kolbe") and Colorado Cross-Disability Coalition ("CCDC") sued Defendant Endocrine Services, P.C. ("Endocrine Services") after she went to their offices and Dr. Agha Kahn ("Dr. Kahn") informed her that she could not have her service dog, Bandit, with her during her appointment. The Plaintiffs brought claims for a violation of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the Colorado Anti-Discrimination Act ("CADA"). Ms. Kolbe sought both monetary damages and declaratory relief, as well as an injunction, while CCDC sought only equitable relief. The Court split the claims between those triable to a jury—the claims for money damages under Section 504 and CADA—and those triable only to the Court—the claims for declaratory and injunctive relief under all three provisions.

    A jury trial was held on March 15-17, 2022. The jury returned a verdict in favor of Ms. Kolbe, finding that Endocrine Services had discriminated against her, although the jury also concluded that Ms. Kolbe had not proven that the discrimination was intentional. The jury also awarded Ms. Kolbe $20,000 in damages pursuant to CADA. (ECF No. 168.)

While the jury was deliberating, the Court held a bench trial on March 17, 2022, and took additional evidence regarding CCDC's standing to bring a claim for relief. After the jury returned its verdict, the Court ordered the parties to prepare proposed injunctions for its consideration.[1] The Court then took the matter under advisement.

The Court has examined the evidence, considered the parties' stipulations[2] and other filings, evaluated the credibility of the witnesses, and analyzed the law, and is otherwise fully advised. In accordance with Fed. R. Civ. P. 52(a), the Court's findings of fact, conclusions of law, and order of judgment are as follows.

## I. FINDINGS OF FACT

"Pursuant to the Seventh Amendment to the Federal Constitution, in fashioning equitable relief, a district court is bound both by a jury's explicit findings of fact and those findings that are necessarily implicit in the jury's verdict." *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912–13 (10th Cir. 2004). In this case, the jury explicitly found that Endocrine Services committed discrimination under Section 504 and CADA. Because the elements and implementing regulations of those provisions substantially overlap with the elements and regulations of the ADA (CADA expressly ties its provisions to terms set out in the ADA), the jury implicitly concluded that Endocrine Systems violated the ADA as well. The Court's independent review of the evidence supports these conclusions. The jury's findings are incorporated herein by reference.

To the extent that any conclusions of law are deemed to be findings of fact, they are incorporated herein by reference as findings of fact.

*The Parties.*

1. Plaintiff Ms. Kolbe is an individual and a citizen of the State of Colorado.

2. Plaintiff CCDC is a Colorado non-profit organization.

---

[1] The Court received a proposed injunction from Plaintiffs but did not receive a proposed injunction from Defendant.
[2] ECF No. 103, pp. 5-6.

3. Defendant Endocrine Services is a corporation incorporated in, and having its principal place of business in, the State of Colorado.

4. Dr. Kahn is the principle and sole physician of Endocrine Services.

5. Endocrine Services is a health care provider that affects commerce by serving the public.

6. Endocrine Services received federal funding in the form of Medicaid reimbursements.

*Standing.*

7. CCDC is an association that works on behalf of members of the community who have a range of disabilities.

8. CCDC's activities include lobbying to protect the ability of individuals with disabilities to use service animals.

9. CCDC assists its members who use service animals to find housing, employment, and accommodations that will permit the use of those animals.

10. CCDC works to educate the public, including healthcare providers, about the laws regarding service animals.

11. CCDC also seeks to vindicate the rights of its members, including the right to use service animals, by litigating cases like this one in court.

12. Ms. Kolbe sought to become a patient of Endocrine Services in 2016.

13. If Endocrine Services changes its policy to permit her to bring her service dog to appointments, Ms. Kolbe will return to Endocrine Services.

14. Ms. Kolbe is a member of CCDC.

15. CCDC has other members who reside in Pueblo, Colorado.

*The Events of June 8, 2016.*

16. Ms. Kolbe has diabetes and had diabetes on June 8, 2016.

17. Diabetes is a disease that impacts the endocrine system by impairing the body's ability to produce or respond to insulin.

18. One way that diabetes is managed is through the regular testing of an individual's hemoglobin A1c, also commonly referred to as a blood sugar level.

19. A hemoglobin A1c test measures the individual's average blood sugar levels over the previous three months.

20. When an individual is under treatment for diabetes, they may obtain blood sugar readings that are unusually high or low, or their blood sugar readings may appear normal.

21. Ms. Kolbe was first diagnosed with diabetes in 2009 and has received treatment for the disease since that time.

22. Ms. Kolbe has had some difficulty in controlling her blood sugar levels.

23. Ms. Kolbe has a service dog, Bandit, who has been trained to detect when she has dangerously high or low blood sugar levels.

24. When Bandit detects dangerous blood sugar levels, he alerts Ms. Kolbe so that she can take corrective actions.

25. Ms. Kolbe was referred to Endocrine Services by Pueblo Community Health Center to explore the possibility of receiving an insulin pump to assist in her diabetes treatment.

26. Before Ms. Kolbe's visit, Endocrine Services received the results of a recent lab test, including a reading of her hemoglobin A1c.

27. The lab work provided to Endocrine Services showed Ms. Kolbe to have a hemoglobin A1c level of 5.6, which is considered to be in the normal range.

28. On June 8, 2016, Ms. Kolbe attended an appointment at Endocrine Services with Bandit.

29. Bandit was well behaved and housebroken and was not out of control.

30. Before the appointment began, Dr. Kahn's staff informed him that Ms. Kolbe had a dog with her in the waiting room.

31. Dr. Kahn spoke with Ms. Kolbe and told her to remove Bandit from the office and put him in her car.

32. Ms. Kolbe told Dr. Kahn that Bandit was her service dog.

33. Dr. Kahn nevertheless told her she needed to take Bandit to the car.

34. Ms. Kolbe left the office and did not complete her appointment with Dr. Kahn.

35. Because of her need for a service dog, Ms. Kolbe was denied full and equal enjoyment of Endocrine Services' health care services.

36. Endocrine Services discriminated against Ms. Kolbe on the basis of her disability by failing to make or alter its policies, practices, and procedures to permit her to have her service dog accompany her during her appointment.

37. Permitting patients to be accompanied by service animals would not fundamentally alter the nature of the services provided by Endocrine Services.

## II.   CONCLUSIONS OF LAW

To the extent that any findings of fact are deemed to be conclusions of law, they are incorporated herein by reference as conclusions of law.

### A. Standing

38. CCDC's members, and specifically its member Ms. Kolbe, would be able to assert standing on their own behalf.

39. The interests CCDC seeks to protect through this lawsuit are central to that organization's mission and purpose.

40. Neither the claims asserted, nor the relief requested, required the participation of CCDC's individual members in this lawsuit—CCDC could, and did, appropriately represent those members and vindicate their rights.

41. Based on the foregoing, CCDC has associational standing as to the equitable claims in this case.

**B. ADA**

42. Diabetes is a disability because it impairs a major bodily function, specifically the endocrine function. 42 U.S.C. §§ 12102(1)(A), (2)(B).

43. Ms. Kolbe is, and was on June 8, 2016, a person with a "disability," namely diabetes. 42 U.S.C. §§ 12102(1)(A), (2)(B).

44. Endocrine Services is, and was on June 8, 2016, a "Public Accommodation" under the ADA because it is a professional office of a healthcare provider that affects commerce. 42 U.S.C. § 12181(7)(F).

45. Ms. Kolbe is, and was on June 8, 2016, entitled to be accompanied by her service dog, Bandit, in all areas of the Endocrine Services' office where members of the public and clients like Ms. Kolbe are generally allowed to go. 28 C.F.R. § 36.302(7), 42 U.S.C. §§ 12186(b), 12205a.

46. Endocrine Services did not make the only two inquiries permissible in this situation, (1) whether Bandit was required because of a disability, and (2) what work Bandit had been trained to perform. 28 C.F.R. §36.302(b), 42 U.S.C. §§ 12186(b), 12205a.

47. Endocrine Services discriminated against Ms. Kolbe on the basis of her disability by refusing to make or modify its policies, practices, or procedures to permit her to use her service animal. 28 C.F.R. § 36.302(c); 42 U.S.C. §§ 12186(b), 12205a.

48. Endocrine Services violated the ADA.

### C. Section 504

49. Endocrine Services is, and was on June 8, 2016, a "program or activity" as that term is defined because it is a corporation principally engaged in the business of providing health care. 29 U.S.C. § 794(b)(3)(A)(ii).

50. Endocrine Services is, and was on June 8, 2016, a "program or activity receiving Federal financial assistance" through the Medicaid program. 29 U.S.C. § 794(a).

51. Endocrine Services denied Ms. Kolbe the benefits of its program or activity by reason of her disability when it denied her the ability to use her service animal, and therefore Endocrine Services violated Section 504.

### D. CADA

52. Ms. Kolbe is, and was on June 8, 2016, a person with a "disability," namely diabetes. § 24-34-301(2.5), C.R.S. (2021); 42 U.S.C. §§ 12102(1)(A), (2)(B).

53. Endocrine Services is, and was on June 8, 2016, a "place of public accommodation." § 24-34-301(5.1), C.R.S. (2021); 42 U.S.C. § 12181(7)(F).

54. Ms. Kolbe is, and was on June 8, 2016, a qualified individual with a disability who had the right to be accompanied by a service animal in places of public accommodation like Endocrine Services. §24-34-803(1)(a), C.R.S. (2021).

55. Endocrine Services denied Ms. Kolbe the right to be accompanied by a service animal and therefore violated CADA.

## III. ORDER

Based on the foregoing, the Court **FINDS** and **ORDERS** as follows:

(1) That on the Claim for Violation of the Americans with Disabilities Act, brought by Plaintiff Wendy Kolbe and Plaintiff Colorado Cross-Disability Coalition, the Court finds in favor of the Plaintiffs and against the Defendant;

(2) That on the Claim for Violation of Section 504 of the Rehabilitation Act of 1973, brought by Plaintiff Wendy Kolbe and Plaintiff Colorado Cross-Disability Coalition, the Court finds in favor of the Plaintiffs and against the Defendant;

(3) That on the Claim for Violation of the Colorado Anti-Discrimination Act, brought by Plaintiff Wendy Kolbe and Plaintiff Colorado Cross-Disability Coalition, the Court finds in favor of the Plaintiffs and against the Defendant;

(4) That Defendant Endocrine Services, P.C. has 45 days from the date of entry of this Order to make or modify its written policies, practices, and procedures regarding service animals so as to be in compliance with the provisions of the ADA and its implementing regulations, including 28 C.F.R. § 36.302;

(5) That Defendant Endocrine Services, P.C. shall distribute such written policy to all of its employees; and

(6) That Defendant Endocrine Services, P.C. is enjoined and prohibited from denying service to persons with service animals in violation of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Colorado Anti-Discrimination Act and their implementing regulations.

Having resolved the equitable claims, the Court **DIRECTS** that:

(1) That pursuant to the Jury's Verdict, JUDGMENT shall enter in favor of Plaintiff Wendy Kolbe and against Defendant Endocrine Services, P.C. in the amount of $20,000;

(2) That the Clerk of the Court shall enter JUDGMENT in favor of the Plaintiffs and against the Defendant on all claims for equitable relief under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act of 1973, and the Colorado Anti-Discrimination Act;

(3) That as the prevailing parties in this litigation, Ms. Kolbe and Colorado Cross-Disability Coalition are entitled to costs and shall within 14 days of the date of this Order file a bill of

costs, in accordance with the procedures under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1, which shall be taxed by the Clerk of the Court;

(4) That as the prevailing parties in this litigation, Ms. Kolbe and Colorado Cross-Disability Coalition may file a motion for attorney fees within 14 days of the date of this Order;

(5) That this Court will retain limited jurisdiction to hear disputes with respect to the injunction for a period of two years from the date of this Order;

(6) That pursuant to D.C.COLO.LCivR 41.2, the Clerk is directed to administratively close this case, subject to reopening upon good cause shown; and

(7) That, notwithstanding the administrative closure, this Order and Injunction shall remain in effect.

DATED this 31st day of March, 2022.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge