**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 17-cv-1871-RM-SKC

WENDY KOLBE, and
COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit organization,

      Plaintiffs,

v.

ENDOCRINE SERVICES, P.C., a Colorado Corporation,

      Defendant.

---

**DECLARATION OF DAROLD KILLMER IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES AND EXPENSES TO BE AWARDED AGAINST**
**DEFENDANT ENDOCRINE SERVICES, P.C.**

---

I, Darold W. Killmer state as follows:

      1.     I have been retained by counsel for the Plaintiffs to provide an expert opinion as to the reasonableness of the attorney fees sought by Plaintiffs' counsel in the above-captioned action. Plaintiffs' attorney Kevin W. Williams has asked me to provide this declaration in support of the Plaintiffs' Motion for Attorneys' Fees and Expenses, to address the issues of the prevailing market rates in Colorado for civil rights attorneys who provide the types of services provided by him and his co-counsel, Andrew C. Montoya, who served as lead counsel in this case all the way through trial, as well as their Legal Program Assistant ("LPA") in this matter, and the reasonableness of the hours expended to obtain the indisputably excellent result obtained after the federal trial of this matter.

**<u>Background and Credentials of Declarant</u>**

2.      I am a partner in the Denver, Colorado, law firm of KILLMER, LANE & NEWMAN, LLP. My practice consists of plaintiffs' civil rights and employment discrimination cases. I represent plaintiffs who bring claims pursuant to federal and state civil rights statutes, and/or common law provisions representing individuals against corporations and governments that have violated their legal rights. I am currently in practice with David A. Lane and Mari Newman, and our law firm has nine lawyers and additional legal and non-legal staff. I have been in that practice since the summer of 2002.

3.      Prior to forming my present law firm, from 1996 - 2002, I was a partner in the law film of MILLER, LANE, KILLMER & GREISEN, LLP, where I represented plaintiffs in employment and civil rights litigation, including civil rights class action matters.

4.      Prior to forming MILLER, LANE, KILLMER & GREISEN, LLP, I was a senior trial attorney for the United States Equal Employment Opportunity Commission ("EEOC") (1995-96). Among other responsibilities I embraced at the EEOC, I was lead trial attorney in the age discrimination class action lawsuit *EEOC v. Martin Marietta Corp.,* (D. Colo.), the largest age discrimination class action in the history of the United States. That class action was successfully settled on behalf of over 2,000 class members with a value estimated by presiding federal district court Judge Wiley Daniel of nearly $200 million.

5.      Prior to my tenure at the EEOC, I was a partner in the Denver law firm of FEIGER, COLLISON & KILLMER, P.C., a plaintiffs' civil rights and employment law firm. While at FEIGER, COLLISON & KILLMER, P.C., I represented hundreds of individuals in a variety of employment and civil rights disputes, including disability discrimination issues, and litigated

2

scores of such cases, including class action litigation. My entire professional practice of law since 1986 has been devoted to representing individuals in civil rights and employment law matters.

6.      I was an adjunct professor of law at the University of Denver College of Law between 1990 and 2004, where I taught employment law. I have also served for many years on the faculty of the National Institute of Trial Advocacy, teaching principles of trial practice. I have also lectured frequently on topics related to civil rights and employment law, to business groups, continuing legal education seminars and conferences, schools from grade school through postgraduate college courses, and civic organizations. I have made presentations related to civil rights and employment law to such groups as the Colorado Bar Association Labor Law Committee, the Colorado Trial Lawyers Association, the National Employment Lawyers Association, the Plaintiffs Employment Lawyers Association, the Judicial Arbiter Group, the Institute for Advanced Legal Studies, the Equal Employment Opportunity Commission, and Doyle's Inns of Courts. I have for more than the last twenty-five years been included in THE BEST LAWYERS IN AMERICA©, Labor and Employment Law Section, and in Colorado Super Lawyers since 2006. I have been selected by 5280 Magazine as one of the "Top 100 Lawyers in Colorado"; "Top 50 Lawyers in Colorado"; "Top Rated Civil Rights Lawyer in Denver and "Top Employment Lawyer." I have been selected through a peer-review process by U.S. News & World Report - Best Lawyers in America© as "Denver's Best Civil Rights Lawyer". I am listed on the Super Lawyers website as The Top-Rated Civil Rights Lawyer in Denver, Colorado. I was selected by Best Lawyers in America© as "Lawyer of the Year" for Individuals in Employment Law in Denver. I am listed as a Best Lawyer in that publication for

2022 (and many years previously) in the areas of Civil Rights Law, Employment Law - Individuals, and Litigation-Labor and Employment. I have received several additional awards and accolades for my work in civil rights and employment law. In addition, I have published numerous articles related to my practice in the practice of our law firm. *See* https://www.kln-law.com/darold-killmer.

7.       I served as the Editor of the Constitutional Law and Civil Rights column of Trial Talk, the monthly publication of the Colorado Trial Lawyers Association for about twenty years. I have published numerous articles related to employment law and civil rights in The Colorado Lawyer, Trial Talk and elsewhere.

8.       I am a member of the National Employment Lawyers Association and the Colorado affiliate, Plaintiffs Employment Lawyers Association. I was Co-President of the Colorado PELA in 1990. I served on the PELA Board of Directors for more than fifteen years.

9.       I have been retained on many cases as an expert witness in state and federal courts in the areas of civil rights, employment law, disability discrimination cases (in employment and public accommodations cases) and attorney fee petitions. My expert testimony on issues related to the reasonableness of attorneys' hourly rates and the reasonableness of the hours expended in civil rights litigation has been accepted and relied upon by many courts in making attorney fee determinations under the civil rights statutes. For example, the Honorable Judge John L. Kane, Jr. accepted my expert opinion testimony and relied upon it in making his attorney fee determination in the disability discrimination case of *Lucas v. Kmart Corp.,* No. CIV.A. 99-01923-JLK-CBS, 2006 WL 2729260 (D. Colo., July 27, 2006) (Kevin Williams, one of the attorneys representing the Plaintiffs in the case at bar was one of the attorneys

4

representing the representative plaintiffs in the certified class in that case). In another decision, the Honorable Judge Richard P. Matsch accepted my expert opinion and relied upon it in making his attorney fee determination and the disability discrimination case of *Longdo v. Pelle,* No. 15-cv- 01370-RPM, 2016 WL 10591328 (D. Colo., Sept. 8, 2016), a case in which the plaintiff was represented by Andrew Montoya as lead counsel and also Kevin Williams, both of whom are counsel in the case at bar. Based upon my experience and upon significant research in the area, I am very familiar with the hourly rates charged by members of the civil rights bar in the Denver community. Moreover, as counsel for prevailing plaintiffs in previous cases, I have submitted fee petitions and affidavits in support of such petitions in many other cases in the United States District Court for the District of Colorado and elsewhere.

10.    I know both Mr. Montoya and Mr. Williams and am aware of the considerable success and excellent work they have performed over many years. I am aware of their work in this matter and know of the excellent results obtained, a complete victory on claims for damages, declaratory and injunctive relief;[1] because this Court found that Plaintiffs were the prevailing parties in this litigation, they are entitled to file a motion for attorneys' fees and

---

[1] I am aware of the Verdict Form in this case (ECF No. 168) that shows that the jury found no intentional discrimination under Section 504 of the Rehabilitation Act of 1973 ("Section 504"); nevertheless, as this Court noted, Plaintiffs were the prevailing party under Section 504 claims related to injunctive relief, and Plaintiff Wendy Kolbe was awarded $20,000 in damages pursuant to the CADA. In my opinion and as noted by this court in its final rulings, Plaintiff Wendy Kolbe's damages victory was accomplished regardless of which statute was used to get there. I am aware that both Mr. Williams and Mr. Montoya have worked to change the CADA over the years as it relates to damages claims. As a direct result of those efforts and the alternative legal claims these attorneys used in bringing this case, that isolated jury question has no meaningful adverse impact upon the fact that Plaintiff Wendy Kolbe achieved the results she sought. Plaintiffs' counsel determined that they needed to bring claims under both Section 504 and the CADA because this Court has the choice as to whether to accept supplemental jurisdiction over state law claims or not. 28 U.S.C. § 1367(c). Furthermore, this Court determined that Plaintiffs obtained injunctive relief under all three statutes at issue, the ADA, Section 504 and the CADA. Therefore, all work devoted to bringing the Section 504 claim was necessary. It was entirely reasonable for Plaintiffs to move forward on both claims. Counsel in this case are well-versed in the interrelationships of the statutes and their determination to litigate the matter under both claims was sound and effective strategy.

recover their costs and (ECF No. 173, at 8-9). Mr. Montoya, with the continuous and necessary

participation and oversight of Mr. Williams, achieved a complete victory in his first trial as lead

counsel, a jury trial. Many of the cases brought by these accomplished attorneys seek only

injunctive relief and are bench trials. Jury trials are much more difficult to manage. In addition,

the legal challenges and issues like proving standing in order to get injunctive relief are very

difficult to manage. *See, e.g., Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859

F.3d 1243, 1250 (10th Cir. 2017) (quoting *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S.

125, 133-34 (2011) (quotations and alterations omitted)(setting forth the essential elements in all

standing claims); *see also Hunt v. Wash. State Apple Advert. Comm'n,* 432 U.S. 333, 343 (1977)

(setting forth the standards for Associational standing for CCDC). Plaintiffs' counsel were able

to do so in this case combining both the testimony of Wendy Kolbe and CCDC's Executive

Director. I am also familiar with briefing regarding standing issues, how the organization itself

operates to ensure clients with the laws it seeks to enforce and the fact that a plaintiff could

return to a place of over accommodation for the sole purpose of testing whether the entity is in

actual compliance with the law even though that Plaintiff experienced exceptionally unlawful

discrimination during a prior visit (ECF No. 137). These are atypical issues and present unique

hurdles on the road to success in this type of specialized civil rights claim. It is important to note

that the expansion of the concept of "tester standing" in Title III cases was established in the

Tenth Circuit Court of Appeals by the CRLP attorneys in this case working closely with the

attorneys and co-directors of the Civil Rights Education and Enforcement Center in *Colorado*

*Cross Disability Coal. v. Abercrombie & Fitch Co*., 765 F.3d 1205, 1211 (10th Cir. 2014). This

Court was satisfied by the evidence presented through these able attorneys that Plaintiffs had

met the rigorous constitutional requirements for establishing standing in order to obtain crucial

prospective injunctive relief (ECF No. 173, p. 3). Based upon my observations over the last two

decades, these very experienced attorneys in the area of disability rights have been instrumental

in establishing the very law they used to obtain the victories achieved in this case. As a result of

that work, they were successful at trial and obtaining complete relief struggling with

complicated constitutional law and questions pertaining to damages and remedies during this

trial.

11.     After my review of documents from the case file, there is no doubt that

plaintiffs' counsel obtained excellent results after years of litigation. The result obtained is

compelling for the reasons discussed herein, and there are very few lawyers in the Colorado

legal community who are experienced, knowledgeable and tenacious enough to have obtained

such excellent results for their client. These two attorneys have previously achieved tremendous

results on behalf of individuals with disabilities, and extremely marginalized community. The

Colorado Cross-Disability Coalition ("CCDC") itself fulfills its mission of social justice for

people with all disabilities each and every year. It is my opinion that the CCDC and its Civil

Rights Legal Program are doing remarkable work in achieving what disability civil rights laws

were designed to do.

12.     It is my opinion that the hourly rates of the attorneys and legal assistant in this

matter are solidly within the ranges charged within the Colorado legal community with similar

experience and skills, and are reasonable rates pursuant to the disability discrimination statutes at

issue in this case, and that the fees and costs claimed as compensable in the Motion for Fees and

Expenses as well as the costs to be set forth in the Bill of Costs are reasonable and were

necessary and appropriate in obtaining the excellent result on behalf of the Plaintiffs in this matter. In fact, as noted in the final Orders by this Court regarding declaratory and injunctive relief and damages and recovery of attorneys' fees and costs, Plaintiffs were successful on every claim they brought as explained in n.1 *supra*. They obtained an excellent result, and in my experience, obtaining full relief in an Americans with Disabilities Act ("ADA") Title III case (including damages sought pursuant to the Colorado Anti- Discrimination Act) is complicated to say the least. The damages verdict in favor of Plaintiff Wendy Kolbe coupled with Plaintiffs' achievement with respect to declaratory and injunctive relief and the appropriate request by Plaintiffs that the Court retain jurisdiction for any complaints for two years is a complete victory. Plaintiffs could not have obtained a better result.

13.     That the damage award of $20,000 is not larger is hardly surprising. Cases involving the failure to accommodate regarding a service animal rarely obtain huge damage awards, if they obtain a damage award at all. This Court in its Findings of Fact determined that Ms. Kolbe went to Defendant's medical office on one single occasion and was told by Dr. Khan, the principal and sole owner of Defendant's corporation, to remove her service animal based on what Defendant stated he relied on medical evidence as the reason for demanding Ms. Kolbe remove her service animal from his medical office (ECF No. 173, pp. 4-5). As Judge Matsch ruled in the *Longdo* case referenced above in which I provided an opinion that the rates and time sought for Mr. Montoya and Mr. Williams were reasonable:

> Competent representation in civil rights cases requires significant skill, can consume considerable resources, and entails significant risk for the attorneys who undertake them. They often involve relatively small monetary recoveries even when, as in this case, they seek and accomplish significant non-monetary relief for not only the named plaintiff but also other similarly-situated members of the public.

Reasonable hourly rates reflect that reality.

*Longdo*, 2016 WL 10591328, at *5.

## **Materials Provided and Considered**

14.     I have been provided the following materials for my review and assessment in providing this declaration:

- Court Docket
- Complaint
- Motion for Summary Judgment re: Liability
- Declaration of Andrew Montoya
- Defendant's Brief re: Jury Instructions
- Courtroom Minutes 8/21/2020
- Order re: Continuance 8/24/2020
- Plaintiffs' Brief re: Standing
- Jury Verdict
- Order of judgment
- Final Judgment
- Judge Moore's instructions revised in conference
- Declaration of Kara Gillon
- CV of Kara Gillon
- CV of Andrew Montoya
- CV of Kevin Williams
- Declaration of Kevin Williams
- Conversations with Kevin Williams
- The time and billing spreadsheet showing Mr. Williams' exercise of billing judgment
- The spreadsheet containing costs and reasonable litigation expenses

## **Reasonableness of Hourly Rates**

15.     My current hourly rate as of January 2022 is $675 per hour, and I billed at my previous hourly rate of $650 per hour for several years prior to that. Those rates have been approved by judges in state and federal courts in Colorado. Ten years ago in 2012, my rate was $500 per hour, and that rate had also consistently been approved by federal judges in the federal district of Colorado. My current rate of $675 per hour is a widely accepted market rate and is the

9

rate that I bill to many private clients whom I represent on a straight hourly rate. It is also the rate claimed and paid on fee petitions to be submitted by my own firm after having prevailed in civil rights or employment law cases (I have not had occasion to file a fee petition in calendar year 2022 yet, but my previous hourly rate of $650/hour has been supported in several previous fee petitions). The hourly billing rates of my law partners are $675 per hour for David A. Lane and $625 per hour for Mari Newman. The billing rate for our current associates is between $275 and $525 per hour. We currently bill our paralegals at $120-180 per hour. I am aware of many law films in the Denver community that bill their paralegals at substantially higher rates than this. Experienced paralegals at McKenna Long & Aldridge LLP's Denver office, for example only, billed at $230 per hour even back in 2013.

16.     Our hourly rates – mine of $650 per hour and my partners' rates of $650 per hour for David Lane and $600 per hour for Mari Newman – were recently approved by Judge Timothy Tymkovich, sitting by designation, in the matter of *Carolyn O'Neal v. Fremont County, et al.* Civil Action No. 16-cv-01005-TMT-KLM (D. Colo. June 10, 2020)(ECF No. 199). The rates were also approved by The Hon. Robert McGahey in Denver District Court in the case of *Gutierrez v. Start Up Pavilion, Inc.*, Case no. 18-cv-31923 (Den. Dist. Ct., March 25, 2020) and in the separate case of *BKP, Inc. v. KLN, et al.*, Case No. 19-cv-31940 (Den. Dist. Ct., June 11, 2020). The rates were approved also by the Court in probate proceedings associated with a settlement in the matter of *K.M., et al. v. Hickenlooper, et al.*, No. 17-cv-67-PAB-CBS, on July 18, 2018 (2018PR30075) by the Pueblo District Court. Both my partner David Lane and I were compensated at $590/hour by both Judge Wiley Daniel and Judge Dan Domenico in the case of *Stroup & Lee v. United Airlines*, No. 15-cv-1289 (D. Colo.) [ECF Nos.

232 and 257].

17.     Based upon my familiarity with the attorneys' fees charged by lawyers in this legal community, I am aware of many attorneys whose rates are in the range of $375 to well over $650 per hour. I am familiar with Colorado Bar Association Attorney Fee Surveys conducted periodically as well as judicial opinions and other materials relevant to attorney fee rates in Colorado. I am also familiar with attorney fee rates for employment law and civil rights practitioners nationally, including rates for attorneys who worked in the field of enforcing civil rights for people with disabilities.

18.     I am familiar with and have reviewed the backgrounds and credentials of the lawyers who worked on this matter. Based upon each of their backgrounds, experience and skills, and upon my knowledge of the markets for attorney fee rates in Colorado, their rates of $505 per hour for Mr. Williams, $425 per hour for Mr. Montoya, and $190 per hour for Kara Gillon, who is working as a paralegal/legal assistant at this time, but who is actually an experienced attorney herself, are very reasonable rates in the Colorado community for federal disability discrimination litigation, particularly in the context of this complex case. It is my opinion that because of the experience Ms. Gillon possesses and the need for extensive collaboration on cases for such a small practice, Ms. Gillon's input into substantive matters such as reviewing pleadings and providing strategic contributions for the consideration of the trial attorneys, as well as preparing memos relied upon by the attorneys in this case on points of law, Ms. Gillon's rate should actually be higher. However, there were two other legal assistants involved in this case who did not possess the same background and experience and accomplishments as Ms. Gillon. The rates sought of $190 for former legal assistants are also

11

reasonable.[2] The Plaintiffs in this matter are represented by preeminent lawyers in the area of disability rights. Their experience and credentials warrant (at least) the rates they charge, given their experience, knowledge and their impressive record of success in advancing the rights of people with disabilities people whenever possible. I am aware of a number of the settlements in cases which counsel for the Plaintiffs in this case worked, including cases in which they have collaborated with other extremely skilled civil rights attorneys as well as with the United States Department of Justice ("DOJ"), the federal agency charged with creating and enforcing the regulations applicable to the ADA and which can obtain the type of injunctive relief sought in this case as well as enforcement of the settlement agreements.

19.     Because this Court ordered injunctive relief requiring Defendant to change its service animal policies and train its staff regarding those policies in order to be consistent with the ADA, other individuals with disabilities who use service animals will benefit from the relief obtained in this case as well. Mr. Williams has had many years of experience determining when

---

2  In another case in this district in which I along with many others, submitted an expert opinion regarding the reasonableness of the rates of fees for attorneys and staff, the court arrived at the following conclusion: "The hourly rate at which compensation is awarded should reflect rates in effect at the time the fee is being established by the court, rather than those in effect at the time the services were performed." *Vanech v. Acosta*, 13-CV-00168-RPM, 2019 WL 3938065, at *3 (D. Colo., Apr. 9, 2019). The case at bar spanned five years. All staff increased their hourly rates by ten dollars per year. The more experienced assistant, Kara Gillon, who took over as the Legal Program Assistant in February 2019 and work throughout the remainder of this case, did the bulk of the work leading up to and during trial. There is legitimate basis to compensate all paralegal/legal assistants in this matter at the reasonable rate of $190 per hour, particularly in light of the fact that Ms. Gillon is billed at the same rate the CRLP billed for other legal program assistants, which was $160 per hour in a case in which I provided my expert opinion that was filed with the Motion for Fees in 2019 in the matter of *Jordan v. Shrader*, 18-cv-01225-MSK-NYW, 2020 WL 6392435, at *1 (D. Colo. Nov. 1, 2020). As I opined in that case and still believe in this case, Ms. Gillon's fourteen years of prior experience as a practicing attorney merits a higher rate than the average legal program assistant, Plaintiffs have chosen to exercise judgment and not seeking that same higher rate again at this time. I have been made aware of the contributions that is Gillon has made to the two attorneys involved with respect to legal research on important legal questions as well as substantive comments in motions and other documents filed by the attorneys in the case. It is though there are three attorneys working on this case, but Ms. Gillon has chosen not to continue as a practicing attorney at this time.

collaboration with outside counsel is necessary and when it is not. Such collaboration has led to large class action victories as well as victories working with the federal agency designated for the purpose of drafting the regulations under the ADA and enforcing them. He and Mr. Montoya maintain tight connections with disability rights attorneys around the country for the same purpose in both Colorado and national cases. At least two of the nationwide class actions in which Mr. Williams in the CRLP have been involved in collaboration with co-counsel include the *Kmart* case referenced above as well as *Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1213-17 (10th Cir. 2014) (holding that District Court did not abuse its discretion in certifying nationwide class-action with respect to all stores owned by the defendant).

20.     Plaintiffs' counsel's rates are comparable to the rates published in the Colorado Bar Association 2012 Economic Survey Snapshot ("Snapshot") for attorneys practicing civil rights law with a similar number of years in practice.[3] Exhibit 12 of the Snapshot shows that attorneys with 6 to 10 years in practice were charging an average of $206 per hour, and up to nearly $300 per hour, in 2011; and attorneys with 16 to 25 years in practice charging an average of $273 per hour, and up to nearly $400 per hour, in 2011. Similarly, Exhibit 13 of the Snapshot shows that attorneys practicing civil rights charge an average of $310 per hour, and up to nearly $400 per hour, in 2011. Mr. Williams is approaching his twenty-sixth year of disability civil rights law practice, and Mr. Montoya has worked as an attorney practicing exclusively in the same area for twelve years and was employed as the CRLP Legal Program Assistant prior to

---

[3] Found online here: http://www.cobar.org/Portals/COBAR/Repository/Sections/Opinions/6-20 16/The%20Colorado%20Bar%20Association.pdf?ver=2016-06-21-092107-630&timestamp=1466522470472.

attending law school and rejoining the CRLP as an attorney. Plaintiffs' counsel's rates of $505 per hour for Kevin Williams and $425 per hour for Andrew Montoya reflect a reasonable increase in counsel's rates in the ten years since the Snapshot data was gathered.[4] Also, it is common practice for attorneys to increase their hourly rates periodically to account for their additional experience and other general economic factors, and I find that the periodic rate increases of these lawyers is customary and reasonable.

### Reasonableness of Time Spent and Fees and Costs Claimed

21.     I have also been provided with the time records for each timekeeper in this matter, detailing the tasks performed and the amount of time claimed for each of those tasks. Based upon my experience and knowledge of such standards, the level of specificity contained in those records easily comports with the standards required in this judicial district for compensability of time in civil rights litigation.

22.     Likewise, the amount of time claimed as compensable is reasonable under the circumstances. The efforts put forth in the litigation to secure an excellent result were normal and necessary. There is no material inappropriate duplication of efforts and tasks were assigned and performed at the appropriate level of legal expertise and experience. Mr. Williams has exercised

---

[4] I am also familiar with the 2017 Colorado Bar Association Economic Survey, which can be found online at http://www.cobar.org/portals/COBAR/repository/20 l 7EconomicSurvey.pdf. It does **not** provide the same level of detail with respect to attorneys practicing in this field, but it does not dispute the findings set forth in the 2012 Snapshot described. That 2017 CBA Survey has been roundly criticized by judges in this judicial district, including Judge Daniel and Judge Blackburn. *See Stroup & Lee v. United Airlines*, No. 15-cv-1389-WYD [Doc. 232] ("After carefully reviewing the CBA Survey, I am dubious as to its validity and overall value to the case at hand. . . the CBA Survey 'does not have an attorney group that has comparable skills, expertise, and or recognition as Plaintiffs' attorneys,' thus, I find it to have limited value as applied to this case."); *Hayes v. SkyWest Airline*, No. 15-cv-02015-REB-NYW (D. Colo. July 2, 2018) (ECF No. 220 at 3-4) ("I am not persuaded that this amalgamation of the hourly rates of attorneys across all levels of experience and all areas of practice is an appropriate benchmark for this case.").

appropriate billing judgment and made modifications in the amounts claimed where appropriate.

23.     Given the factual and legal circumstances raised in this case as well as the uncertainties of the verdicts in cases of this kind, the results obtained in this litigation were indisputably excellent. Counsel obtained monetary relief for their client and Defendant has been required to change its policies regarding service animals to come into compliance with the ADA. I am aware that the verdict returned by the jury concluded that this Defendant did not engage in intentional discrimination, but this determination is immaterial to the entitlement to a fully compensatory attorney fee because the Plaintiff Wendy Kolbe secured monetary damages under the state law equivalent to what they could have received under either Section 504 of the Rehabilitation Act of 1973 ("Section 504") or the Colorado Anti-Discrimination Act ("CADA"). As previously mentioned, the equitable and injunctive relief obtain is similarly excellent. Finally, the case and the attorneys who litigated it have advanced an important public interest and vindicated important civil rights for both the clients and for the public.

24.     The financial risks involved in taking cases like this are substantial given that the attorneys involved represent plaintiffs who cannot afford attorneys, thereby shifting all of the responsibilities for costs to the lawyers and foregoing receipt of payment for their legal work. There was a significant possibility that Plaintiffs in this case might have ended up not obtaining anything despite the numerous hours of time devoted to this case by these attorneys. The recovery of attorneys' fees enables attorneys like those involved in this case to continue enforcing disability rights laws. Without a meaningful recovery of such attorney fees as contemplated by the federal and state fee-shifting statutes, it would be impossible for nonprofit organizations to sustain keeping attorneys doing this difficult work. Furthermore, the time it

takes for a small nonprofit legal program such as this one to spend on a case like this diverts their time and ability away from bringing other cases to enforce the civil rights of people with disabilities and engaging in other activities as set forth in the CVs of Kevin Williams and Andrew Montoya. Each of these attorneys must also give appropriate attention to the needs of other cases they have brought at the same time and must alternate tasks as needed to meet the needs of all of their other obligations. As all experienced litigators are aware, it is impossible to know in advance how much time will need to be devoted to a case, and when a recalcitrant defendant takes a case all the way to trial, much more attention is required to manage all of the motions filed by both parties and the extraordinary amount of time required to prepare for and marshal the case through trial.

      25.     The time spent by the attorneys and their staff was reasonable and necessary in order to achieve the result obtained in this case. Because I am familiar with Supreme Court case law and the law in the Tenth Circuit Court of Appeals regarding the awards, there are many factors in this case that suggest Plaintiffs' lodestar should be awarded in full: (1) an award of the lodestar fee is presumptively accurate;[5] (2) Plaintiffs' counsel are willing to forgo an enhancement despite obtaining complete relief as explained, the five years they waited from the time this case was filed until the time it went to trial, the real risk of not recovering fees at all, the dearth of available attorneys who will take disability civil rights cases on for some of these very reasons, the experience and skill of these attorneys who not only had a complete grasp of the case law in this case, but were responsible for creating some of it and other factors cited by

---

[5] S*ee Blum v. Stenson*, 465 U.S. 886, 897 (1984) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

courts for allowing an enhancement;[6] (3) In an exercise of billing judgment, Plaintiffs' counsel are cutting off the fees at the end of March 2022, removing a large part of the time devoted to extensive work on this motion for fees;[7] such a reduction is unnecessary, and demonstrates counsels' reasonableness in their overall request; and (4) Mr. Williams' line by line review of the massive amount of time entries billed by the timekeepers in this case all required and necessary as a result of the defendant refusing to resolve this case and the elimination of over $50,000, a more than 10 percent reduction, from the total amount of presumptively valid fees sought. This additional exercise of billing judgment is further evidence of the reasonableness of the overall request. The factors listed above are all clear signs that counsel are not trying to bill more than was necessary in this case. There is a very good chance they could obtain payment for all of the above-referenced time spent. As Mr. Williams notes in his Declaration, it is the policy of the Civil Rights Legal Program to "make change, not money." Nevertheless, no public interest law firm or nonprofit legal program can sustain itself with the prospect of recovering reasonable fees and costs. It is well-established that public interest groups are entitled to a fully compensatory fee when it represents the prevailing party or parties in a civil rights case, as here.

26.     The expenses claimed in this case are in line with the types of expenses typical

---

[6] *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1354-1360 (10th Cir. 1992) (setting forth the various factors involved in determining whether an enhancement should be awarded, many of which are applicable in this case as well as the cases cited therein).

[7] Moreover, it is well-established that it is proper to allow recovery for reasonable attorneys' fees for the time spent seeking the recovery of attorneys' fees and costs in fee-shifting cases such as this one (i.e., "fees on fees"). *Vanech v. Acosta*, No. 13-CV-00168-RPM, 2019 WL 3938065, at *3 (D. Colo. Apr. 9, 2019) (citing *Hernandez v. George*, 793 F.2d 264, 269 (10th Cir. 1986)). "It is obviously fair to grant a fee for time spent litigating the fee issue, at least if the fee petitioner is successful and his claim as to a reasonable fee is vindicated, since it is the adversary who made the additional work necessary." *Glass v. Pfeffer*, 849 F.2d 1261, 1266 n.3 (10th Cir. 1988) (quoting *Prandini v. Nat'l Tea Co.*, 585 F.2d 47, 54 n.8 (3d Cir. 1978) (internal quotation marks omitted)). Plaintiffs are not currently including such "fees on fees" in their petition, rendering their bottom-line request even more reasonable.

in litigation of this kind.[8]

27.     The total amount of attorney fees, costs and litigation expenses sought by the petition is exceedingly reasonable. The total amount claimed of $535,880.50 in fees and $4,149.56 in total litigation expenses and taxable costs is well within the normal range of what should be awarded in this case. Plaintiffs will be submitting their Bill of Costs to the clerk as ordered by this court. The amount Plaintiffs seek for taxable costs totals $2,639.50. The litigation expenses over and above those sought in the Bill of Costs total $1,500.20. The types of litigation expenses and the amounts sought in taxable costs to be submitted with Plaintiffs' Bill of Costs are reasonable under both rules applicable to awards of taxable costs as well as litigation expenses sought pursuant to 42 U.S.C. § 12205. The amount of attorney fees and costs sought by the petition is exceedingly reasonable. Counsel have earned a fully compensatory fee and should be awarded the appropriate costs and litigation expenses sought for their indisputably excellent and important work in vindicating the federal and state civil rights laws in this matter.

## Conclusion

28.     Although I was requested to provide my opinion regarding the reasonableness of the rates sought and the number of hours reasonably expended in this case, having watched these now seasoned professionals in this area perform this work and achieve great successes for people

---

[8] Undersigned counsel is aware that Plaintiffs have not cut off their costs and litigation expenses continuing through the filing of the motion. This is perfectly reasonable because the cost outlays for a nonprofit organization are all paid for in advance by the organization which needs to recover those costs in order to be made whole in a prevailing party attorney case such as this. Cost outlays in advance for a case that goes to trial can be very expensive for any law firm to absorb. For a nonprofit organization, it is even more important that those costs and litigation expenses that have been paid throughout the course of the case such as this are recovered in full to compensate it for spending the money in order to vindicate the rights of people with disabilities.

with disabilities, I feel comfortable providing my opinion about the nature of the case itself. Even though I understand that this case was tried in approximately two days total, that does not detract from the fact that that an enormous amount of work was required as set forth above by both counsel and their assistant simply because this is a disability civil rights case. There are those who might argue this was a "simple" case. That would be inaccurate. Disability rights in my opinion is a profoundly complex area of law, even within the already complex area of civil rights litigation.

29.     I have observed many losses on disability civil rights cases in the employment arena, in public accommodations, and elsewhere. This was an enormous victory that required "each dollar and each hour for which the [Plaintiffs] seeks an award[,]" particularly with respect to the reductions Mr. Williams and Mr. Montoya have chosen to make with respect to what they are not seeking compensation for (but for which they are entitled).

30.     Finally, I happen to know from declarations and exhibits submitted with them in this case as well as the many years I have been familiar with CCDC, that CCDC was at first an all-volunteer grassroots, nonprofit organization run nearly exclusively by and for people with disabilities. Mr. Williams finished his undergraduate degree at the University of Colorado at Denver and spent all the years he attended law school at the University of Denver College of Law as a person with the disability he has today. Like most who started CCDC, Mr. Williams lived in subsidized housing, having as his only sources of income SSDI and SSI and volunteered as an attorney enforcing civil rights for people with disabilities after leaving law school continuing the same living arrangement until the CRLP made a sufficient amount through the recovery of reasonable attorneys' fees and costs for the organization to be able to finally start

collecting a salary. In similar fashion, Mr. Montoya, after receiving his law degree had become so dedicated to CCDC's mission and purpose as a legal assistant prior to law school, he made a somewhat similar arrangement with CCDC so that could continue working in this field. Over the years, these two attorneys have been able to prevail sufficiently through numerous settlements and trial victories to be able to sustain the CRLP, but without reasonable compensation for the remarkable work they do. These are attorneys who are willing to do this work without being compensated at the high rates many attorneys seek in private law practice and even those who work for nonprofit organizations. They clearly believe in the cause, but the organization and its CRLP must be provided with reasonable compensation in cases in which victory on all claims was obtained for the Plaintiffs involved. Without their steadfast dedication, the program would not exist, and people with disabilities in Colorado and beyond, and the public more broadly, would be far worse for the loss. Normally, I would not opine beyond the norm of discussing the reasonableness of rates and costs as well as hours expended, but CCDC as an organization seeks to vindicate the civil rights of people with disabilities and so many other issues that affect the daily lives of people with disabilities that I feel it is important for this Court to take a serious look at the time expenditure, the comparative rates of these two attorneys to the market in which they practice and the types of cases they bring and the extraordinary victory in this case. Plaintiffs' counsel provided every opportunity for Defendant to resolve this matter without the necessity of a full federal trial, but Defendant refused to listen.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 28, 2022 in Denver, Colorado.

_____
Darold W. Killmer