IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Raymond P. Moore

Civil Action No. 17-cv-01871-RM-SKC

WENDY KOLBE, and
COLORADO CROSS-DISABILITY COALITION, a Colorado non-profit organization,

    Plaintiffs,

v.

ENDOCRINE SERVICES, P.C., a Colorado Corporation,

    Defendant.

---

**ORDER GRANTING MOTION FOR ATTORNEY'S FEES (ECF NO. 178)**

---

This matter is before the Court on Plaintiffs Wendy Kolbe and Colorado Cross-Disability Coalition's Motion for Attorneys' Fees and Expenses to be Awarded Against Defendant Endocrine Services, P.C. (the "Motion") (ECF No. 178), which is opposed by Defendant. Upon consideration of the Motion, relevant parts of the court record, and being otherwise fully advised, the Court finds and orders as follows.

    **I.    BACKGROUND**

Plaintiffs Wendy Kolbe ("Plaintiff Kolbe") and Colorado Cross-Disability Coalition ("Plaintiff CCDC," and together "Plaintiffs") sued Defendant Endocrine Services, P.C. ("Endocrine Services" or "Defendant") after she went to their offices and Dr. Agha Kahn ("Dr. Kahn") informed her that she could not have her service dog, Bandit, with her during her appointment. The Plaintiffs brought claims for a violation of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the Colorado Anti-Discrimination Act ("CADA"). Plaintiff Kolbe sought both monetary damages and

declaratory relief, as well as an injunction, while Plaintiff CCDC sought only equitable relief. The Court split the claims between those triable to a jury—the claims for money damages under Section 504 and CADA—and those triable only to the Court—the claims for declaratory and injunctive relief under all three provisions.

A jury trial was held on March 15-17, 2022.  The jury returned a verdict in favor of Plaintiff Kolbe, finding that Endocrine Services had discriminated against her, although the jury also concluded that Plaintiff Kolbe had not proven that the discrimination was intentional.  The jury also awarded Plaintiff Kolbe $20,000 in damages pursuant to CADA. (ECF No. 168.)

The Court held a bench trial during the jury's deliberations, during which it took additional evidence regarding Plaintiff CCDC's standing to bring a claim for relief and, after receiving the jury's verdict, directed the Parties to prepare proposed injunctions for its consideration.[1]

On March 31, 2022, the Court issued an Order in which it made findings of fact and conclusions of law.  (ECF No. 173.)  In that Order, the Court found in favor Plaintiffs on their claims for violation of the Americans with Disabilities Act, violation of Section 504 of the Rehabilitation Act of 1973, and violation of the Colorado Anti-Discrimination Act.  The Court then entered an injunction, ordering that within 45 days of the entry of the Order, Defendant would modify its written policies, practices, and procedures in order to be in compliance with the applicable statues and implementing regulations.  The Court directed that Defendant distribute that policy to all its employees, and enjoined Defendant from denying service to persons with service animals in violation of those statutes and regulations.  The Court noted that, as prevailing

---

[1] The Court received a proposed injunction from Plaintiffs but received nothing from Defendant.

parties, Plaintiffs were entitled to file a motion for attorney fees. Finally, the Court retained limited jurisdiction to hear disputes over the injunction for a period of two years.

Plaintiffs filed the Motion and requested a total of $535,880.50 in attorney fees and $1,500.20 in litigation expenses, separate and apart from the Bill of Costs that was separately submitted to the Clerk of Court and addressed there. (ECF No. 178.)

Defendant filed a Response, arguing that both the hourly rates charged, and the hours expended on this matter by Plaintiffs' counsel were excessive. (ECF No. 184.) Specifically, Defendant made a fairly cursory argument that Plaintiffs' counsel should not have been working on this matter during the lengthy delays between the originally scheduled trial dates and the dates on which the trail was reset, which happened twice in this case due to the COVID-19 pandemic. Defendant argued that a lengthy period of time elapsed between the first pretrial conference and the eventual trial date, and that Plaintiffs' counsel's time during that period constituted "churning." Defendant suggested that the Court should cut a total of 746.7 hours from the 1406.6 hours that Plaintiffs' counsel billed. Defendant also argued that the rates charged were unreasonable. Defendant noted that Plaintiffs' senior attorney, Kevin Williams, charged $505 per hour, and the more junior attorney, who was also lead attorney in this case, Andrew Montoya, charged $425 per hour. Defendant then asserted that the result was a combined hourly rate of $930 per hour. Finally, Defendant argued that Plaintiffs' counsel wasted time on several unnecessary tasks—in particular, on the preparation and filing of a surreply that was ultimately not accepted by the Court, researching for a motion for a Rule 11 sanction that was ultimately not filed, drafting a motion to continue the trial, and spending 115.5 hours drafting jury instructions.

Plaintiffs filed a Reply in which they addressed each of Defendant's arguments. (ECF No. 185.) Plaintiffs noted that this case was a civil rights case, involving specialized issues of

3

both federal and state law, as well as an evidentiary dispute over Plaintiff Kolbe's medical condition. Plaintiffs also noted that the litigation extended over many years—five years elapsed before trial—and that time was also expended in preparing for the trial dates that were ultimately reset. Furthermore, Plaintiffs point out that the case involved some unique issues, such as the question of associational standing for Plaintiff CCDC and Plaintiff Kolbe's standing for the purposes of prospective relief. Finally, Plaintiffs note that their counsel obtained total success, prevailing on all theories of liability and receiving all relief sought, including both monetary damages and declaratory relief.

## II.     LEGAL STANDARD

Pursuant to the Americans with Disabilities Act,

> In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual.

42 U.S.C. § 12205. The Rehabilitation Act contains the same provision. 29 U.S.C. § 794a(b). Furthermore, "[e]ach circuit that has addressed the issue has concluded that the considerations that govern fee-shifting under § 706(k) of title VII or under 42 U.S.C. § 1988 apply to the ADA's fee-shifting provision, because the almost identical language in each indicates Congress's intent to enforce them similarly." *No Barriers, Inc. v. Brinker Chili's Texas, Inc.*, 262 F.3d 496, 498 (5th Cir. 2001). Because these statutes are intended to provide judicial access for individuals who claim violations of their civil rights, "a prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

In making a fee request, the claimant must prove both that he or she was the prevailing party in the proceeding and that the requested fee is "reasonable." *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (addressing award of fees under 42 U.S.C. § 1988).

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

*Hensley*, 461 U.S. at 433. This so-called "lodestar calculation" is presumed to be a reasonable fee. *Robinson*, 160 F.3d at 1281. This inquiry, then, requires the Court to determine whether the hourly rates charged were reasonable as well as whether the hours expended were reasonable— "whether the attorney's hours were 'necessary' under the circumstances." *Id.* The Court should look to see whether the prevailing party exercised billing judgment and made a good-faith effort to exclude from the fee request any hours that were duplicative, unnecessary, or otherwise excessive. *Id.* Among the factors to consider in making a determination of reasonableness are

> (1) whether the tasks being billed "would normally be billed to a paying client,"
> (2) the number of hours spent on each task, (3) "the complexity of the case,"
> (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the maneuvering of the other side," and (6) "potential duplication of services" by multiple lawyers.

*Id.* (quoting *Ramos v. Lamm*, 713 F2d 546, 554).

### III. DISCUSSION

In this case, the Parties do not dispute that Plaintiff was the prevailing party, and the Court previously so concluded. (ECF No. 173.) Thus, the only question is whether or not the amount of fees claimed is "reasonable."

### A. Hourly Rates

Defendant first argues that the hourly rates billed by Plaintiffs' attorneys was unreasonable. (ECF No. 184.) Without cite to authority, Defendant apparently argues that the Court should consider the combined rate of the two attorneys together, which would yield an hourly rate of $930 per hour. The Court can see no reason in logic or in law why this is the appropriate analysis. Defendant seems to argue that this is proper because "Mr. Williams seemed to check and revise just about everything Mr. Montoya did." Perhaps this is why Defendant concludes the hourly rate should be combined. But the Court disagrees. "There is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Anchondo v. Anderson, Crenshaw & Assocs., L.L.C.*, 616 F.3d 1098, 1105 (10th Cir. 2010) (quoting *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir.1988)). In any event, Mr. Williams and Mr. Montoya clearly performed a number of distinct tasks over the course of five years of actively litigating this case, and they did keep meticulous billing records that the Court has carefully reviewed. The Court therefore considers each of their billable rates independently.

Mr. Williams included with the petition his curriculum vitae which revealed his over 25 years of experience working for the Civil Rights Legal Program at the Colorado Cross-Disability Coalition. (ECF No. 178-2). He also listed as examples of his work 27 different cases involving litigation to vindicate the rights of disabled individuals in Colorado. And he noted that those cases represent a fraction of the cases in which he was involved. Also attached to the Motion was the expert opinion of Darold Killmer who opined that Mr. Williams' rates were "solidly within the ranges charged within the Colorado legal community" by attorneys of similar

experience and skill. (ECF No. 178-9.) The Court concludes that the rate of $505 per hour for Mr. Williams' work was clearly reasonable.

Mr. Montoya similarly attached his curriculum vitae to the Motion and noted that he has worked for the Colorado Cross-Disability Coalition as an attorney since 2010. (ECF No. 178-7.) He also worked for the Coalition prior to completing law school, from 2005 through 2007 in the role of Legal Program Assistant. He listed 16 cases, all involving the civil rights of disabled individuals, as examples of his work. Mr. Killmer also offered his opinion that the rate of $425 per hour for Mr. Montoya's time was reasonable and within the range of rates charged in Colorado for attorneys with similar experience. (ECF No. 178-9.)

Finally, Plaintiffs' attorneys included the curriculum vitae of Kara Gillon, the legal program assistant with whom the named attorneys worked on this case. (ECF No. 178-8.) Ms. Gillon had worked at the Colorado Cross-Disability Coalition since 2019. But uniquely Ms. Gillon was actually also a licensed attorney. While she was not a member of the Colorado Bar, the Motion noted that, as a result of her legal education and experience (she was a practicing attorney for approximately 13 years), Ms. Gillon was able to perform tasks more traditionally performed by attorneys, such as researching points of law, that would not have been within the normal job description of a legal assistant. And Mr. Killmer opined that he believed someone with Ms. Gillon's credentials should actually have been charged at a rate higher than the $190 per hour billed by Plaintiffs' counsel. (ECF No. 178-9.) He also noted that the rate of $190 per hour was reasonable.

Defendant makes no effort to rebut the evidence put forth by Plaintiffs' counsel and fails to cite a single piece of authority to suggest that the rates charged in this case were unreasonable. In light of the evidence presented, as well as the Court's own knowledge of the prevailing rates

in this legal market, the Court finds that the rates charged by each member of Plaintiffs' legal team were reasonable.

### B. Hours Expended

Defendant makes only a slightly more robust argument regarding the hours expended. Defendant's arguments about hours expended appear to be that (1) Plaintiffs' counsel should not have expended any time on this case between the time of the final pretrial hearing and the month before trial took place in March of 2022; (2) Mr. Williams should not have spent any time supervising Mr. Montoya; (3) Plaintiffs' counsel should not have expended any time drafting a surreply to a Motion when the filing of surreplies is discouraged by the Court's rules and because the Court ultimately declined to consider the surreply; (4) Plaintiffs' counsel should not have spent time researching a Rule 11 sanction that was never filed; (5) Plaintiffs' counsel should not have expended more than one hour on a Motion to Continue; (6) Plaintiffs' counsel expended excessive time on drafting jury instructions.

As an initial matter, in reviewing the amounts Plaintiff requests, the Court is mindful it has no obligation to play the "green-eyeshade accountant" as the essential goal is "to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Nevertheless, the Court has carefully reviewed the 153 pages of billing records submitted by Plaintiffs in this case and concludes as follows.

Defendant first contends Plaintiffs' counsel should not have expended any time on this case between the time of the final pretrial hearing in January 2020 and the month before trial took place in March of 2022. Defendant concedes that time entered in the month prior to a scheduled court date is appropriate, but states that "a COVID delay was no surprise," apparently arguing that Plaintiffs' counsel should not have wasted time in trial preparations during the month prior to the original trial date on September 14, 2020, and the month prior to the second

trial date set for March 15, 2021.  (ECF No. 184, p.2.)  Defendant also apparently believes that any time expended by Plaintiffs' counsel outside of those month-long pretrial periods was unnecessary and inappropriate.

With regard to Defendant's argument that "a COVID delay was no surprise," the Court notes that Plaintiffs filed a Motion to Continue Deadlines and Trial Preparation Conference on July 21, 2020.  (ECF No. 110.)  In that Motion, Plaintiffs also requested to continue the trial date, although they also expressed a preference to move forward with the trial as scheduled if possible.  Less than 2 months before trial, Defendant opposed the continuance.  (ECF No. 114.)  While the continuance requested by Plaintiffs was not due to COVID-19, the Parties' conduct makes it clear that they both believed trial would take place as scheduled beginning on September 14, 2020.  This court then denied the Motion to Continue on July 28, 2020.  (ECF No. 116.)  The jury trial was not vacated until August 24, 2020, only three weeks before trial and after the trial preparation conference had already taken place.  (ECF No. 134.)  Had Plaintiffs' counsel failed to prepare for trial under those circumstances they would have been professionally irresponsible.  Similarly, although the Parties both jointly requested a continuance of the second trial date (ECF No. 139), the Court did not grant that Motion until January 27, 2021, barely more than two weeks before the rescheduled trial preparation conference (ECF No. 140.)  The Court cannot conclude that in preparing as though trial would be taking place as scheduled, Plaintiffs' counsel were wasteful—rather, they were taking steps the Court would expect of competent counsel.

The months between those scheduled dates also included a number of billing entries to which Defendant objects.  Again, the Court has carefully reviewed the time records of Plaintiffs' counsel and notes that during the period between the first scheduled trial and the date on which the trial was ultimately held, (omitting the one-month trial preparation time that Defendant concedes is reasonable), the majority of time expended went towards the following: (1) preparing

and revising briefing regarding standing, as requested by the Court; (2) reviewing information regarding juror disqualification in light of Plaintiffs' counsel's concern that the Court intended to exclude any jurors who had diabetes; (3) research on Rule 11 sanctions in light of conflict with Defendant's counsel over jury instructions; (4) revising jury instructions; and (5) drafting a Motion for Continuance.  (ECF No. 178-3.)  The Court will not second guess the time invested by Plaintiffs' counsel regarding time spent drafting the brief on the questions of standing which the Court itself requested.  Plaintiffs' expert, Killmer, opined that the standing issues in this case were "atypical" and that they "present unique hurdles" in this type of civil rights claim.  (ECF No. 178-9.)  Nor is the Court inclined to speculate about the need for Plaintiffs' counsel to research questions surrounding jury service or Rule 11 sanctions.  And the Court is not willing to say that, simply because it was never filed, it was unnecessary for Plaintiffs' counsel to draft a Motion for Rule 11 sanctions—the existence of such a motion and the willingness to file it may provide adequate remedy for improper conduct by an opposing counsel.  Similarly, simply because a surreply is discouraged by the rules of this Court, and was not ultimately accepted, the Court cannot conclude that the drafting of such a document was inherently unnecessary and a waste of time.  The Court also rejects Defendant's argument that Plaintiffs' counsel expended excessive amounts of time drafting the Joint Motion for Continuance in this case.  (ECF No. 139.)  This was not merely an ordinary motion to continue, but rather was one centered around the unique facts in this case.  Namely, that the COVID-19 pandemic was increasingly dangerous at that time and that several of the participants in the trial, including Plaintiff Kolbe and Plaintiffs' counsel, had comorbidities putting them at higher risk of contracting COVID-19 and of having a negative outcome once contracted.  Under those circumstances, the Court is unsurprised that the request for a continuance required more time than the one hour that Defendant apparently believes is sufficient.

As stated, the Court will not second guess every strategic decision made by the party seeking fees. *Cf. Robinson*, 160 F.3d 1275, 1283 (noting that litigants should be given "breathing room" to raise alternative legal theories and noting that the ultimate result of the suit is what matters for the purpose of awarding fees). Rather, this Court must ensure that Plaintiffs' counsel exercised "billing judgment" by "winnowing the hours actually expended down to the hours reasonably expended." *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Co.*, No. 90-cv-02757-WYD-KMT, 2014 WL 793363 at *2 (D. Colo. Feb. 26, 2014) (quoting *Case v. Unified School Dist. No. 233, Johnson Cty. Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998)). The Court notes that Plaintiffs' counsel delegated significant amounts of research on the juror service question to the legal program assistant, thus significantly reducing the cost of that work. Furthermore, Plaintiffs' counsel attest that they cut time such as that spent on purely administrative tasks, time that was more than expected on a specific task, and time for certain other tasks, such as speaking with the media, given that compensation for such tasks has been denied by other courts. They also reduced the billed amount for certain instances of conferral between counsel and collaboration. Ultimately, Plaintiffs' counsel cut more than $50,000 in time and also chose not to seek fees for the time spent preparing the Motion itself.

The Court also disagrees with Defendant that Mr. Williams appears to have unnecessarily duplicated or supervised the work of Mr. Montoya. This case represented Mr. Montoya's first as lead counsel. Mr. Williams, as the much more experienced attorney, appropriately oversaw his work, and the result was a complete victory for Plaintiffs. Furthermore, by permitting Mr. Montoya to complete the bulk of the work, and having Mr. Williams act primarily as a supervisor, Plaintiffs' counsel reduced the overall amount billed, given Mr. Montoya's lower billing rate. In addition, the Court reiterates that Plaintiffs' counsel frequently delegated legal work to Ms. Gillon, a licensed attorney who was nevertheless billed at a legal assistant's rate.

11

Defendant's final argument is its most persuasive. Defendant points out that Plaintiffs' counsel spent a total of 115.5 hours drafting and redrafting jury instructions between August 30, 2021, and March 11, 2022. Defendant argues that only 20 hours should have been required to draft the instructions. "In determining what is a reasonable time in which to perform a given task or to prosecute the litigation as a whole, the court should consider that what is reasonable in a particular case can depend upon factors such as the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." *Ramos*, 713 F.2d 546, 554 (disapproved on other ground by *Pennsylvania v. Delaware Valley Citizen's Council for Clean Air*, 483 U.S. 711, 729 (1987)). In *Ramos*, therefore, the Tenth Circuit noted that the plaintiffs' counsel had recorded more than 100 hours spent drafting the complaint. *Id.* The Court concluded that "[w]hile this expenditure of time may have been reasonable, it demands explanation." *Id.* So too does the expenditure of so much time on jury instructions require explanation in this case.

Plaintiffs' counsel has, however, provided that explanation here. In the Reply, Plaintiffs' counsel explains that "[t]his [time spent on jury instructions] is one of the many times in which Defendant's actions or inactions drove up the fees incurred by Plaintiffs' counsel." It is true that Defendant failed to timely file its proposed jury instructions prior to the second trial preparation conference. (ECF Nos. 155, 158.) It is also true that, when Defendant did belatedly submit its instructions, those instructions were identical to the earlier-filed set and contained many of the same errors, including misidentification of the parties to the suit. (ECF Nos. 124, 154.) Furthermore, Defendant's counsel signed off on a set of stipulated instructions that were submitted by Plaintiffs' counsel, but that when it ultimately submitted its own set of instructions, some of Defendant's instructions conflicted with those previously stipulated. (ECF Nos. 144,

154.) For example, it submitted a different burden of proof instruction. It also submitted a conflicting instruction on damages.

Plaintiffs also note that the Parties vigorously disputed the proof necessary to demonstrate liability in this case. (Compare ECF Nos. 154, 158.) Defendant repeatedly insisted that in order to prove the elements of liability under the ADA, Plaintiff Kolbe was required to prove that her "doctor certified to Defendant that she had a disability, and the requested accommodation was necessary." (ECF No. 154, p.25.) While the Parties both agreed that Plaintiff Kolbe was required to prove her disability at trial, Plaintiffs' counsel forcefully argued that Defendant was not entitled to require such proof prior to providing her with accommodation. As is clear from this Court's Findings of Fact, Conclusions of Law, Order of Judgment and Injunction, and as is also plain as a matter of law, Defendant could legally make only two inquiries before denying service: (1) whether Plaintiff Kolbe's service animal was required because of a disability, and (2) what work the service animal had been trained to perform. (ECF No. 173, p.6; 28 C.F.R. §36.302(b), 42 U.S.C. §§ 12186(b), 12205a.) The dispute over this question required Plaintiffs' counsel to submit additional briefing on the issue to the Court. (ECF No. 158.) This same dispute was apparently the subject of the potential Rule 11 sanctions Plaintiffs' counsel considered requesting. In this case, therefore, the Court concludes that a substantial portion of the time spent by Plaintiffs' counsel on jury instructions was the result of Defendant's maneuvering.

The Court concludes that the hours billed in this case were ultimately reasonable. The issues involved were deceptively complex, involving both state and federal civil rights laws. Furthermore, from filing through trial, this case lasted almost five years, and it involved two motions for summary judgment as well as additional motions, and the added complication of litigating during a pandemic in a case involving a number of participants with

13

immunodeficiencies. Plaintiffs' counsel have provided detailed and meticulous billing records justifying the time they expended and demonstrated the use of billing judgment by eliminating approximately 10 percent of their billable time. To the extent that Defendant argues the fees requested are inappropriate because they are disproportionate to the damages awarded to Plaintiff Kolbe, the Court notes that "cases of this nature often provide a relatively small monetary incentive and a significant commitment of time, resources, and risk for counsel. It is for that very reason that attorneys' fee awards are authorized by civil rights statutes, in order to provide effective access to justice." *Longdo v. Pelle*, No. 15-cv-01370-RPM, 2016 WL 10591328, *6 (D. Colo. Sept. 8, 2016).

Finally, the Court notes that Defendant's counsel has given the Court very little assistance in determining precisely how much the requested fees should be reduced. Rather, they have merely counted the number of pages of billing records submitted for each of the contested periods of time, which it concludes are 57, and then multiplies that number by what they say is the average number of hours per page, 13.1. (ECF No. 184, p.2.) From that they suggest that Plaintiffs' counsel overbilled for 746.7 hours of time. In addition to all of the reasons already discussed, the Court is not willing to rely on such an imprecise calculation. Given all of the factors, the Court concludes that it will not reduce the requested fee award. The Court therefore GRANTS the Motion and awards Plaintiffs $535,880.50 in attorney fees.

### C. Litigation Costs

Plaintiffs also request recovery of their litigation costs pursuant to the ADA. 42 U.S.C. § 12205. Specifically, Plaintiffs seek $1,500.20 for certain expenses related directly to litigation and not otherwise recovered as costs. (ECF No. 178-4.) The majority of the expenses are for travel, and the remainder appear to cover the costs of printing and/or sending various documents necessary for trial. Defendant does not dispute that Plaintiffs are entitled to recover such costs

under the ADA or the amount requested. The Court therefore GRANTS the Motion and awards the requested $1,500.20 in litigation costs.

## IV. CONCLUSION

Plaintiffs finally argue that none of the amounts already awarded against Defendant have been paid, and request that the Court set a date certain by which time all amounts due are to be paid. (ECF No. 185, p.15.) The Court will not do so at this time. It is generally the responsibility of the judgment creditor to secure payment from the judgment debtor, and here Plaintiffs have not shown that other available remedies, such as the procurement of a judgment lien or attorney's lien, are inadequate.

Based on the foregoing, it is **ORDERED**

(1) That the Motion for Attorneys' Fees and Expenses (ECF No. 178) is GRANTED in favor of Plaintiffs as the prevailing parties in this matter;

(2) That Plaintiffs are awarded $535,880.50 in attorneys' fees; and

(3) That Plaintiffs are awarded $1,500.20 in litigation costs.

DATED this 15th day of February, 2024.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge